Santiago **ACEVEDO PEREZ**, et al., Plaintiff(s),

v.

**UNITED STATES GOVERNMENT**, Defendant(s).

**Civil No. 09–1996 (DRD).**

United States District Court, D. Puerto Rico.

Sept. 19, 2012.

Order Denying Reconsideration March 19, 2013.

Juan Ramon Rodriguez–Lopez, Rodriguez Lopez Law Office, Ponce, PR, for Plaintiffs.

Lisa E. Bhatia–Gautier, United States Attorneys Office, District of Puerto Rico, San Juan, PR, for Defendants.

## ORDER AND JUDGMENT

DANIEL R. DOMINGUEZ, District Judge.

Pending before the Court are: (a) plaintiffs' *Motion Requesting Order*, Docket

No. 55; and (b) the Government's *Opposition to Plaintiffs' Motion Requesting Order*, Docket No. 58. For the reasons set forth below, plaintiffs' motion is denied.

### Factual and Procedural Background

The factual scenario that triggered the instant action stemmed on or about July 2005, when DHS's Headquarters were short of personnel and "sought special agent volunteers [at least two volunteers from the San Juan office] for lateral transfers to the Washington, D.C., office due to a personnel shortage." *See* Docket No. 53–2, DHS' letter of June 22, 2009, which includes the findings and analysis of the agency related to Acevedo's administrative claim. *See also Complaint*, Docket No. 1, ¶ 15. The Court notes that at least one employee volunteered in response to DHS' request, that is, Edward Owens, and his transfer was approved. *See Complaint*, Docket No. 1, ¶ 16. In view of the fact that there were no more volunteers and/or with the qualifications required by the DHS, then the San Juan Office through Acting Special Agent in Charge Lydia St. John–Mellado prepared a list of four agents based on seniority to select another agent GS–14 to be reassigned to DHS' Headquarters. *See Complaint*, Docket No. 1, ¶¶ 15 and 16.

On or about September 7, 2005, Acevedo received a letter dated September 6, 2005 from Marcy M. Foreman, Director from the United States and Customs Enforcement ("ICE") informing plaintiff of his assignment to DHS' Headquarters "in line with my priority of strengthening internal staffing in key positions. *See* Docket No. 32–2, pages 77–78. On or about September 7, 2005, Acevedo "accepted the reassignment on September 22, 2005." *See* Docket No. 53–2. Acevedo's date to enter on duty was January 8, 2006. *See* Docket No. 32–2, letter from plaintiff to John M. Gaudioso from ICE.

Due to personal family problems, Acevedo requested two extensions of time to relocate, and the same were granted by the DHS. Acevedo's third request for extension of time was denied by the DHS, as Acevedo's personal family problem depends on a state court ruling, and at the time, it was uncertain when the court was going to issue the ruling.[1] Based on this scenario, Acevedo decided to retire on March 3, 2006, and now claims constructive discharge. *See Complaint*, Docket No. 1, ¶ 21.

The instant case was filed on September 30, 2009 by plaintiff Santiago Acevedo Pérez and others against the United States Government, the Department of Homeland Security, Immigration and Customs Enforcement, Janet Napolitano, Lydia St. John–Mellado, and other unknown defendants. Plaintiff Acevedo claims that "he was forced to resign (constructive discharge)" based on his request not to relocate to Headquarters, on personal family reasons. *See Complaint*, Docket No. 1, page 6. Plaintiff Acevedo further claims that he "was humiliated, retaliated, discriminated, harassed, persecuted" by his supervisors and his peers. *Id.*

Acevedo also claims that his constitutional right to due process has been violated, and claims damages under Articles 1802 and 1803 of the Puerto Rico Civil Code, 31 L.P.R.A. §§ 5141, 5142. His federal claim is premised on 42 U.S.C. § 1983, and also jurisdiction under Title VII.[2] It is

---

1. Plaintiff Acevedo alleges that "Plaintiff's daughter was facing criminal charges on involuntary Homicide for driving under the influence of alcohol." *See Complaint,* Docket No. 1, ¶ 19. "The presiding judge at the criminal case placed her bail and under Plaintiff's sole custody." *Id.*

2. The alleged Title VII claim is a discrimination claim due to national origin. There is

important to make reference to plaintiffs' *Complaint*, Docket No. 1, pages 1–2, in order to better illustrate plaintiffs' claims:

3. This Honorable Court has jurisdiction under Title VII, 42, and others et. als. of the United States Code, Section 1983, Civil Rights Act 1964, and Federal Labor Laws.

4. Plaintiff invoke the Constitutional Right to Due Process under the U.S. Constitution and under the Puerto Rico Constitution under the supplemental jurisdiction principles in the interest of judicial efficiency and economy.

5. Plaintiff also invoke the article 1802 and 1803 of Puerto Rico Civil Code and the Puerto Rico Law against discrimination, and Puerto Rico Labor Laws under the supplemental jurisdiction principles in the interest of judicial efficiency and economy.

A Status Conference was held in the instant case on September 5, 2012, Docket No. 54. During the course of the conference, the Court reviewed the new documents filed by plaintiffs, as the record was incomplete. *See* Minutes of August 30, 2012, Docket No. 50. Plaintiffs were further ordered to brief the Court on or before September 4, 2012 by 3:00 p.m., (a) whether there are any tolling events between March 2006 and September 30, 2009, the filing date of the complaint; and (b) whether plaintiff Acevedo timely exhausted the administrative remedies. *See* Minutes of August 30, 2012, Docket No. 50. As of this date, plaintiffs have failed to address the tolling issue.

Upon reviewing the new documents filed by plaintiffs, the Court found that the in-

stant action is time barred, and plaintiffs agreed with the analysis made by the Court. *See* Minutes of September 5, 2012, Docket No. 54. Notwithstanding, plaintiffs filed a *Motion Requesting Order* on September 6, 2012, Docket No. 55, alleging that the other causes of action are not time barred.

The Government filed its opposition on September 11, 2012, Docket No. 58. Generally, the Government alleges that: (a) plaintiffs have never filed a claim under the Federal Torts Claim Act ("FTCA"); (b) "[a] discrimination claim at any agency cannot be construed as an all-encompassing claim for any imaginable potential claim against it, its head or individual employees;" (c) plaintiffs' argument that the FTCA and Title VII claims' statute of limitations is 180 days from the notice of right to sue of the agency decision, is not supported in the record with any legal authorities; (d) some claims under the Puerto Rico torts' statute, that is, Articles 1802 and 1803 of the Puerto Rico Civil Code, and "other claims, such as, retaliation and harassment, were not even alleged in the complaint; and (e) "[r]egarding constitutional torts, Plaintiffs are even in a worst shape, since they never made any single claim against any individual defendant, administratively or otherwise, nor served them with a copy of the Complaint." *See* Docket No. 58.

### Legal Analysis

#### A. DHS' Final Determination Letter and the Time to File an Appeal.

The DHS determined that "a finding of no discrimination is appropriate in this matter," after a thorough analysis of plain-

---

also an alleged charge filed with the administrative EEOC, which constitutes a claim under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 *et seq.,* and Title VII of the Civil Rights Act of 1964 ("Title

VII"), 42 U.S.C. §§ 2000e *et seq.,* referred to in the complaint merely as "Federal Labor Laws." The national origin claim is not described in the complaint. *See Complaint,* Docket No. 1, ¶ 3.

**94**

tiff Acevedo's claims of national origin; age discrimination, and constructive discharge. *See* Docket No. 53–2. The Court finds most relevant the findings made by the DHS, *albeit* the Court is cognizant that the agency's findings are not binding:

Forced retirement is also included in the scope of constructive discharge. *Schafer v. Bd. of Pub. Educ.*, 903 F.2d 243, 248–49 (3d Cir.1990). However, the complainant "has an obligation not to assume the worst and jump to conclusions too quickly. [A complainant] who quits without giving [management] a reasonable chance to work out a problem has not been constructively discharged." *Phillips v. Taco Bell Corp.*, 156 F.3d 884, 890 (8th Cir.1998).

. . .

Management denied refusing to delay Complainant's [Acevedo] reporting date or forcing him to retire, the Special Agent in Charge (SAC) testified he granted Complainant several reporting date extensions to accommodate Complainant's personal family matter requiring his presence during his daughter's legal and medical problems—first to January 8, 2006, then to February 5, 2006. (Ex. 9, pp. 5–7; Ex. 10, pp. 22–30; Ex. 11, pp. 6–7; 9–23). The SAC stated he could not grant Complainant any further extensions since the SAC did not know when the courts would resolve the legal situation involving Complainant's daughter. (Ex. 10, pp. 23–24).

. . .

Complainant failed to produce any evidence demonstrating pretext. Complainant merely raised bare allegations ICE reassigned him to "get rid of excess supervisors" in the San Juan office, and because the DSAC would "look good before HQ" by reducing supervisors. (Ex. 9, p. 7). Complainant provided no evidence to support these allegations,

however, or to show how they were relevant to establishing pretext. Ultimately, Complainant failed to produce any evidence supporting his allegations, demonstrating pretext, or proving a discriminatory motivation.

. . .

Complainant failed to prove he was constructively discharge from his position. Complainant simply produced no evidence proving he was subjected to unlawful conduct.

It is the decision of DHS a finding of no discrimination is appropriate in this matter. Accordingly, you are not entitled to relief. If you are dissatisfied with this decision, you may file an appeal according to the enclosed instructions.

■ The Notice of Appeal Rights which is part of the final determination letter issued by the Department of Homeland Security ("DHS"), is dated June 22, 2009 and received by plaintiff Acevedo on July 1, 2009, *see* Docket No. 41–3, pages 22–23. DHS provided plaintiff with the Notice of Appeal Rights. *See* Docket No. 53–2. The time to file an action in the United States District Court is 90 days from receipt of the final determination of the agency and/or the Notice of the Right to Sue Letter, unless a timely appeal is taken with the EEOC. *See* Docket No. 53–2.

For easy reference, the Court will make direct reference to the wording used by the agency in the Notice of Appeal Rights.

You have the rights to appeal to the Equal Employment Opportunity Commission (EEOC) or to file a civil action in an appropriate United States District Court. . . .

FILING AN APPEAL WITH EEOC

You have the right to appeal this decision to **EEOC within 30 days** of the day you receive *this final decision.* . . .

FILING A CIVIL ACTION

You also have the right to file a civil action in an appropriate **United States District Court within 90 days after you receive this final decision if you do not appeal to EEOC, or within 90 days after receipt of EEOC's final decision on appeal. You may also file a civil action after 180 days from the date of filing an appeal with EEOC if there has been no final decision by EEOC. ...** (Emphasis ours).

*See* Docket No. 53–2.

The Court finds that the DHS' final determination letter is clear, and so is the record. *See* Docket No. 53–2. The record is silent as to whether plaintiff Acevedo filed a timely appeal with the EEOC within the 30 day term provided by the Notice of Appeal Rights. Hence, plaintiff had until July 30, 2009, to file an appeal with the EEOC, however, there is no evidence in the record to support this finding.

If plaintiff did not appeal to the EEOC, then plaintiff had 90 days to file a civil action with the District Court, as provided by the Notice of Appeal Rights. As stated by the Court at the Status Conference of September 5, 2012, this action is time barred, as it was filed 91 days from receipt of the DHS' final determination letter, as admitted by plaintiffs' counsel. *See* Minutes of September 5, 2012, Docket No. 54.[3]

The Court further finds that plaintiff Acevedo accepted its relocation voluntarily, and further requested two extensions of time to relocate before finally declining the reassignment after the third extension of time was denied, on the ground that the DHS does not accept a relocation with an open date. *See Report of EEO Counseling* of May 10, 2006, Docket No. 41–3, page 55, and *Infra* pages 95–96, n. 4. It is critical to note that since Acevedo clearly accepted to be relocated to DHS' Headquarters on or about September 22, 2005 and until his last extension of time to relocate due on February 5, 2006, plaintiff continued on his regular job, and receiving full payment.[4]

---

**3.** The Minutes of September 5, 2012, Docket No. 54 state:

At the outset plaintiffs' counsel informed the Court that the documents requested have been submitted *albeit* the brief on the issue of tolling is still pending. Upon review of the new documents provided by plaintiffs, the Court ascertained that the instant action is time barred. Plaintiffs acknowledged receipt of the final determination made by the Department of the Homeland Security ("DHS"), on July 1, 2009. Pursuant to the letter of June 22, 2009 from the DHS, plaintiff was advised of his rights in the event Mr. Acevedo did not agree with the findings of the DHS. *See* Docket No. 53–2.

The record shows that the instant complaint was filed on September 30, 2009, hence, ninety-one (91) days after receipt of the letter on July 1, 2009. The time to file an action in the United States District Court is 90 days, unless an appeal is timely taken with the EEOC. *See* Docket No. 53–2.

**4.** *See Report of EEO Counseling* of May 10, 2006, Docket No. 41–3, page 55.

**I mentioned to Ms. Falcon that Mr. Acevedo was requesting a reprieve on his EOD, with no specific date when he would report to HQ.** I explained that defense lawyers in Puerto Rico drag these proceedings for extended period of time and that even though I empathize with what Mr. Acevedo was experiencing the most I was willing to extend was 2 more pay periods. **On January 4, 2006, 4:08 PM, I received an electronic message from Ms. Falcon asking if I still would agree to extend Mr. Acevedo's EOD for another 2 weeks, which I responded "yes."** On January 4, 2006, 4:28 PM, **I received an electronic message from Ms. Falcon acknowledging my decision and also indicating that Mr. Acevedo's EOD had been changed to February 5, 2006.** (Emphasis ours).

The Court further notes that on or about June 1, 2006, Acevedo filed an "Individual Complaint of Employment Discrimination" with the DHS, Case No. HS–06–ICE–001210. *See* Docket No. 41–3. The Report of Investigation issued by the U.S. Department of Homeland Security, Santiago Acevedo Pérez,

Furthermore, before plaintiff voluntarily retired, he again requested an indefinite period of time to report to duty at DHS' Headquarters. Based on the voluntariness of the decision made by plaintiff Acevedo, the Court must determine that there are no damages involved, nor any violations to Acevedo's constitutional rights,[5] because said rights are included in the administrative claim filed with the DHS.

Moreover, plaintiffs' *Complaint*, as to a violation under local law, 31 L.P.R.A. §§ 5141–5142, is based on general conclusory allegations which failed to meet the plausibility test set by *Bell Atlantic Corporation, et al. v. Twombly, et al.*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). Also at first brush, the discrimination alleged by plaintiff Acevedo fails on the merits even assuming that plaintiff complies with a *prima facie* case under the test set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). The *McDonnell Douglas* test is used when plaintiff do not have direct evidence to prove discrimination.

## B. *Constructive Discharge v. Forced Retirement.*

The standard to prove constructive discharge under Puerto Rico law lies on plaintiff having "to show that his 'working conditions were so difficult or unpleasant that a reasonable person in [his] shoes would have felt compelled to resign.'" *Alvarado v. Donahoe*, 687 F.3d 453, 465 (1st Cir.2012), quoting *Roman v. Potter*, 604 F.3d 34, 42 (1st Cir.2010). "This is also an objective standard, and a plaintiff may not sustain such a claim by relying exclusively in subjective beliefs." *Id.*, citing *Marrero v. Goya of P.R., Inc.*, 304 F.3d 7, 28 (1st Cir.2002). "To prove a retaliatory constructive discharge, [a plaintiff] must establish that his work environment was hostile." *Id.*, quoting *Hernández–Torres v. Intercont'l Trading, Inc.*, 158 F.3d 43, 48 (1st Cir.1998). For the reasons set forth below, Acevedo failed to show that his working environment was hostile. Indeed, the record clearly shows that Acevedo decided to retire voluntarily after the third request for extension of time to relocate was denied by the agency, as the request was open ended, that is, without a specific date to report to duty. Nonetheless, the Court makes the following findings that stem from the record and the supporting evidence provided by plaintiff Acevedo.

In the instant case, on or about the Summer of the year 2005, the DHS Headquarters were interested in reassigning special qualified agents to key positions in Headquarters. *See* Docket No. 41–3, Let-

HS–06–ICE–001210, dated November 2006 (the date is illegible). *See* Docket No. 41–3. This report was followed by a final determination letter dated June 22, 2009 issued by the DHS and addressed to Larry Berger, Esq., legal representative of Acevedo Pérez. The final determination letter was received by Acevedo on July 1, 2009, as admitted by counsel in the conference held on September 5, 2012. *See* Docket No. 41–3, pages 22–23, the Return Receipt signed by Acevedo on July 1, 2009, and the Minutes of September 5, 2012, Docket No. 54.

5. But Acevedo's constitutional rights are purely conclusive: "Plaintiff invoke the Constitutional Right to Due Process under the U.S. Constitution and under the Puerto Rico Constitution under the supplemental jurisdiction principles in the interest of judicial efficiency and economy." *See Complaint*, Docket No. 1, ¶ 4. Plaintiff also claims damages under Articles 1802 and 1803 of the Puerto Rico Civil Code and Puerto Rico law against discrimination and the "Puerto Rico Labor Laws." *See Complaint*, Docket No. 1, ¶ 5. The local laws are only curious as the plaintiff is a federal employee.

ter from Marcy M. Forman, Director, U.S. Immigration and Customs Enforcement dated September 6, 2005 to plaintiff Acevedo (hereinafter "Letter of September 6, 2005"). The selection of the agents to be reassigned was based on "seniority and high qualifications." *See* Report of EEO Counseling [stamped on June 26, 2006], Docket No. 41-3, page 53. The Report of EEO Counseling further states:

SAC St. John said that the use of seniority lists, normally avoids EEO complaints. **Mr. Oyola said that the reassignment was for the essential needs of the Service and that AP** [aggrieved party Acevedo Pérez] **had been selected based on his excellent performance record and abilities that were fully considered.**

SAC Lydia St. John said that perhaps AP was under the wrong impression, as they had just in February or March 2006, learned that they had an "excess" of 2 Group Supervisors, which was after AP's retirement. **AP's former position was currently being advertised. If he reapplied as a reinstatement eligible, his selection would be considered by HQ Mission Support Division, she said.**

Headquarters Management said that they were unable to provide a resolution to the complaint as they stated that AP had volunteered for the reassignment,

they had extended the EOD date several times, nearly a 5 months delay from date of selection, but due to the needs of the Service, could no longer extend an open-ended, unknown EOD date. **Management said that AP had also, himself, decided on the retirement option.[6]** (Emphasis ours).

In sum, plaintiff Acevedo was selected for reassignment based on his seniority and experience, but above all for his "excellent performance record and abilities." *See* Docket No. 41-3, page 53. Acevedo's employer even recommended that he "reapplied as a reinstatement eligible, his selection would be considered by HQ Mission Support Division." *Id.* After all, the relief being requested by Acevedo at the time was reinstatement with all the back benefits and monetary relief. *See* Docket No. 41-3, page 95.

Based on these premises, the Court finds that Acevedo has failed to surpass the employer articulated reason that he resigned after having voluntarily accepted the transfer to DHS' Headquarters. Plaintiff Acevedo has been unable to prove that the employer's action constitutes a sham or was an action to disguise discrimination, specially after the employer granted plaintiff two extensions of time with full salary. DHS denied the third extension of time, when Acevedo requested an extension of time with an open date to relocate.[7]

6. *But see* Acevedo's Interrogatory, Docket No. 41-3, page 95:

11. What is the specific relief you seek in this complaint?
**As of now I would like re-instatement** [sic] **with all the back benefits and a reasonable amount of monetary relief** to pay for some expenses that I have inquired, etc. (Emphasis ours).

7. **On or about September 21, 2005, plaintiff Acevedo voluntarily accepted to be relocated to DHS Headquarters. Thereafter, on September 23, 2005, Acevedo's daughter was**

**charged with driving under the influence, and the accidental death of a third party who died as a consequence of the accident.** "As part of her conditions of release she was placed under my [Acevedo's] custody and was to remain in college and working, be home by 10:30 PM, etc." *See* Docket No. 41-3, page 91. In view of the fact that there was no date certain when the state court would issue its final ruling on the case of Acevedo's daughter, DHS declined to grant any further extensions, as the positions in Headquarters needed to be filled with personnel that had specific qualifi-

The Court notes that the transfer that Acevedo accepted, on or about September 21, 2005, and reiterated on January 4, 2006 and on February 5, 2006, was unfortunately contingent to the judicial outcome of his daughter's criminal charges filed on or about September 23, 2005. Notwithstanding, DHS suggested Acevedo to apply for reinstatement even after Acevedo had opted to retire, as he also could improve on his retirement remuneration.

The Court further notes that plaintiff Acevedo's Notification of Personnel Action, Docket No. 41–3, specifically states that Acevedo's retirement was "voluntary," as opposed to forced, and that it became effective on March 3, 2006, see Lines 4 and 5–B.

### C. The other Causes of Action.

In the instant case, the jurisprudence is pellucidly clear and perfectly applicable to the factual scenario. Under these precedents, it is clear that Acevedo has failed to prove that the employer's articulated non-discriminatory reason is a sham. As to a complaint under the Age Discrimination in Employment Act ("ADEA"), the test is that "but for" plaintiff's age, see Gross v. FBL Financial Services, Inc., 557 U.S. 167, 129 S.Ct. 2343, 174 L.Ed.2d 119 (2009). As to plaintiff Acevedo alleged discrimination for national origin, the test is whether the national origin was "a motivating factor." "To meet this burden, the plaintiff must prove not only that the reason articulated by the employer was a sham, but also that its true reason was plaintiff's race or national origin." Rodríguez–Cuervos v. Wal–Mart Stores, Inc., 181 F.3d 15, 19 (1st Cir.1999), citing Shorette v. Rite Aid of Maine, Inc., 155 F.3d 8, 13 (1st Cir.1998). Therefore, plaintiff

Acevedo failed to comply with the threshold test set under McDonnell Douglas, 411 U.S. 792, 802–803, 93 S.Ct. 1817 (1973), also known as the "burden shifting" test:

> The complainant in a Title VII trial must carry the initial burden under the statute of establishing a prima facie case of racial discrimination. This may be done by showing (i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications.
>
> . . .
>
> The burden then must shift to the employer to articulate some legitimate, nondiscriminatory reason for the employee's rejection.

As to the damages claimed under Articles 1802 and 1803 of the Puerto Rico Civil Code, the Court reminds the plaintiffs that Acevedo is a federal employee. Acevedo's federal cause of action has been dismissed, and hence, he suffers no injury. Consequently, Acevedo cannot have a cause of action under local law when plaintiff's federal cause of action fails. Plaintiff Acevedo is also reminded that EEOC claims do not interrupt or toll non-EEOC claims based on other states or federal statutes. See American Airlines, Inc. v. Cardoza–Rodríguez, 133 F.3d 111, 124 (1st Cir.1998) ("Equitable tolling does not apply, however, if an employee is actually or constructively aware of his or her ADEA rights"). Id., citing Kale v. Combined Ins. Co. of America, 861 F.2d 746, 753 (1st Cir.1988).[8]

---

cations. Mr. Acevedo's qualifications fulfilled the Headquarters' requirements.

8. Since plaintiff Acevedo retired voluntarily effective March 4, 2006, any claim under the Federal Tort Claims Act ("FTCA") and/or any

Mr. Acevedo also claims discrimination on national origin. The Court reviews Acevedo's grounds to sustain his national origin discrimination claim. The Court refers to the supporting evidence submitted by Acevedo, as the record is bare as to any legal arguments on this matter, except for the general conclusory and unsupported allegations made by plaintiff. In his interrogatory of August 22, 2006, Docket No. 41-3, page 95, Acevedo answered:

12. Is there anything else related to this issue that was not asked that you believe is relevant and wish to add to the record? If yes, please do so here.

Another very relevant issue to be considered in this situation deals with National Origin. The fact is that being in Puerto Rico and particularly of Puerto Rican descent exposes us to be more susceptible to involuntary transfers. The Office in Puerto Rico has a particularity in that the money used to run the Office comes from the Foracker [sic] Law. This Law was enacted by Congress in early 1900's, due to our particular political condition. The Law basically states that our Agency is to collect excise taxes of goods coming from foreign. The taxes collected shall be used for local employee expense, computers, pay, and other benefits. These funds are to be used only for the benefit of the office in the Island of Puerto Rico and not for any other office. Money collected is in excess of the needs of the office, thus an "excess" of money is collected. However this money is to be returned to the PR Government. This fund is tracked under the Puerto Rico Trust Fund. Other employees from Puerto Rico have been forced out of the Island on similar circumstances. However, since I was new to the Agency I do not know these employees.

. . .

Sometime prior to my "constructive discharge" I requested an interview with Acting SAC Lydia St. John. During the meeting I asked in reference the Puerto Rico Trust Funds for moves. She told me that she had talked to Mr. Borges, Customs Border Protection Director's to use of the PR Trust Fund. Mr. Borges advised her that as the Law stated as long as she could justify using the funding for the good of the office in PR she could do it. She then stated that her idea was that if she moved agents from PR to HQ's in turn those agents would intercede for the office in PR. This would be beneficial because then our office would receive more benefits and obtain a better flow of information that would benefit the office in PR. She then stated that the office had received information from a SA [Special Agent] that she had moved that resulted in significant arrests before DEA that was investigating. She added that SAC DEA had

---

local non-EEOC claim, are time barred, as plaintiff filed the instant case on September 30, 2009, and there are no claims whatsoever in the complaint tolling the period of one year for local claims under Articles 1802 and 1803 of the Puerto Rico Civil Code, and the local discrimination laws, as well as under Title VII and ADEA. *See Olmo v. Young & Rubicam of Puerto Rico, Inc.,* 110 D.P.R. 740, 10 P.R.Off. Trans. 965 (1981) (wherein the Puerto Rico Supreme Court set forth the actions which the applicable statute of limitations is one year). The Court notes, however, that plaintiff Acev-

edo never filed a timely FTCA claim. *See* Docket No. 58, page 3. Hence, Acevedo only appeals rights stem from the final determination issued by the Department of Homeland Security dated June 22, 2009, and received by Acevedo on July 1, 2009. Since Acevedo did not appeal the DHS's final decision to the EEOC within 30 days from July 1, 2009, then Acevedo had the option to appeal to the District Court within 90 days from July 1, 2009, that is, September 29, 2009. Hence, the instant complaint is time barred.

complained to HQ's on the information. She said that she could not use the funds to move someone to another office other than HQ's because she could not justify the benefit of the island would receive.

During a staff meeting ASAC Polo Diaz stated that the Puerto Rico Trust fund could be used in my case because it was taken form the "moving funds" provided on the budget within the fund. However, if the money is allotted as "move funds" it still has to meet the "Puerto Rico benefit rule"; furthermore I cite my letter of reassignment were it states for the "benefit" of HQ's; exhibit 5. For further information on the use of the funding and establish my "National Origin" complaint you can refer to Mr. Marcelino Borges, CBP Director or the PR Trust Fund budgeting officer from Alcohol Tobacco and Firearms, 787–766–5084, 6080, or the Puerto Rico Tax Bureau, Evelyn Figueroa, 787–721–2020, x2739.

In as much as the statements mentioned by Acting SAC Lydia St. John as to excess supervisors in the SAC San Juan Office, witnesses in 7 e can verify this information.

■ The Court, however, is not persuaded by plaintiff Acevedo's argument on discrimination for national origin, as the Puerto Rico Trust Fund can be used to pay the moving costs for DHS' agents based in Puerto Rico, regardless of whether the agent is from Puerto Rico or Puerto Rico descent. In sum, the use the moneys deposited with the Puerto Rico Trust Fund can only be used if the use of the funds requested meet the "Puerto Rico Benefit Rule." However, plaintiff's interpretation that the funds can only be used to people from Puerto Rico or Puerto Rican descent is totally unsupported by the law and the record, and is a general conclusory allega-

tion made by plaintiff. Hence, Acevedo failed to show that his national origin was "a motivating factor" to sustain a discrimination claim under Title VII. The record, if anything, shows exactly the opposite. But anyway, as explained *Infra* at page 95, n. 3, the case is time barred. *See also* Minutes of September 5, 2012, Docket No. 54.

Plaintiff Acevedo, therefore, has merely a cause of action for constructive discharge. *See Alvarado v. Donahoe,* 687 F.3d 453, 465 (1st Cir.2012), but the same is time barred.

As to the discrimination charge under ADEA, Title VII and national origin, the record is clear that Acevedo failed to file a timely appeal with the EEOC, and opted to file a civil action with the District Court. The Court finds, however, that the action is time barred as it was filed 91 days after his receipt of the DHS' final determination letter, as accepted by plaintiffs' counsel. However, even assuming *arguendo* that this action would have been timely filed, the Court's analysis would have been the same, based on the supporting evidence provided by plaintiff Acevedo.

Lastly, the Court finds that there is no personal individual liability in cases involving national origin and the ADEA. *See Fantini v. Salem State College, et al.,* 557 F.3d 22 (1st Cir.2009).

### Conclusion

For the reasons set forth above, plaintiffs' *Motion Requesting Order,* Docket No. 55, is denied.

This case is now dismissed with prejudice, and judgment is hereby entered.

This case is now closed for all administrative and statistical purposes.

IT IS SO ORDERED, ADJUDGED AND DECREED.

## ORDER

Pending before the Court are plaintiffs' *Motion To Reconsider,* Docket No. 61, and defendants' *Opposition To Plaintiffs' Motion For Reconsideration,* Docket No. 64. The Court has recently been informed that the settlement negotiations being conducted by the Settlement Counsel for the United States Court of Appeals for the First Circuit ("First Circuit"), were unsuccessful. For the reasons set forth below, the plaintiffs' reconsideration request is denied.

### Introduction

The facts that triggered the instant action took place on or about July 2005 when the United States Department of Homeland Security (hereinafter "DHS") were short of personnel in Headquarters based on Washington, D.C., and asked for volunteers from the San Juan Office. *See Order and Judgment,* Docket No. 60, page 1, and the references cited therein. At the time, plaintiff Santiago Acevedo Pérez (hereinafter "Acevedo") was one of the agents with more seniority based in the San Juan Office. *Id.* On or about September 7, 2005, received a letter dated September 6, 2005 from Marcy M. Foreman, Director from the United States and Customs Enforcement ("ICE") informing Acevedo of his assignment to DHS' Headquarters "in line with my priority of strengthening internal staffing in key positions." *See Order and Judgment,* Docket No. 60, pages 1–2. On or about September 7, 2005, Acevedo "accepted the reassignment on September 22, 2005." *Id.* at page 2. Acevedo's date to enter on duty was January 8, 2006. *Id.* Due to personal family problems, Acevedo was unable to move to Headquarters and enter on duty on January 8, 2006. *Id.* Acevedo was unable to timely resolve his family situation, and requested two additional extensions of time to enter on duty at Headquarters. *Id.* Acevedo moved for a third extension of time to enter on duty, and this time the request was denied. *Id.* Based on these premises, Acevedo voluntarily decided to retire on March 6, 2006. On September 30, 2009, Acevedo filed the instant action claiming constructive discharge.

On June 15, 2012, the defendants moved for summary judgment, Docket entries No. 26, 27, 28. Plaintiffs opposed the summary judgment on August 6, 2012, Docket No. 41. A review of the plaintiffs' opposition showed that the documents and exhibits filed were incomplete. Several orders and conferences followed. On September 3, 2012, plaintiffs provided the documentation requested by the Court in order to place the Court in a position to rule on the motion for summary judgment and/or set the case for trial, except the brief on the issue of tolling. On September 5, 2012, the Court presided a Status Conference, as the case was set for trial later in September 2012, to discuss the status of the case, and the new documents provided to the Court. Amongst the new documents provided by plaintiffs was the certificate of service return receipt requested of the final determination made by the Agency, which mailed and it was received by Acevedo on July 1, 2009. *See Minutes* of September 5, 2012, Docket No. 54. During the course of the conference, the Court became aware that the instant action was time barred for one day. In other words, Acevedo had ninety days to file suit in the district court from July 1, 2012. Hence, the ninety days became due on September 29, 2012. The Court record shows that the instant complaint was entered electronically on September 30, 2009 at 4:30 a.m. AST, and filed on September 30, 2009. *See* Docket No. 1.

An *Order and Judgment* was entered on September 19, 2012, Docket No. 60. A *Motion to Reconsider* and *Notice of Ap-*

*peal* were filed by plaintiffs on October 12, 2012, Docket entries No. 61, 62. The defendants opposed the reconsideration request on October 26, 2012, Docket No. 64.

### Applicable Law and Discussion

### The motion for reconsideration standard.

Motions for reconsideration are generally considered either under Rules 59 or 60 of the Federal Rules of Civil Procedure ("Fed.R.Civ.P."), depending on the time such motion is served. *Pérez–Pérez v. Popular Leasing Rental, Inc.,* 993 F.2d 281, 284 (1st Cir.1993). It is settled that "[a] motion for reconsideration 'does not provide a vehicle for a party to undo its own procedural failures and it certainly does not allow a party to introduce new evidence **or advance arguments that could or should have been presented to the district court prior to the judgment.'** " (Emphasis ours). *Marks 3–Zet–Ernst Marks GmBh & Co. KG v. Presstek, Inc.,* 455 F.3d 7, 15–16 (1st Cir.2006). Thus, a motion for reconsideration cannot be used as a vehicle to re-litigate matters already litigated and decided by the Court. *Standard Química de Venezuela v. Central Hispano International, Inc.,* 189 F.R.D. 202, n. 4 (D.P.R.1999). In sum, "[a] party cannot use a Rule 59(e) motion to rehash arguments previously rejected or to raise ones that 'could, and should, have been made before judgment issued.' " *See Soto–Padró v. Public Buildings Authority, et al.,* 675 F.3d 1, *9 (1st Cir.2012) (citations omitted). The Court should also renew and reconsider whether it "patently misunderstood a party ... or has made an error not of reasoning by apprehension." *Ruiz Rivera v. Pfizer Pharmaceuticals, LLC,* 521 F.3d 76, 82 (1st Cir.2008) (quoting *Sandoval Díaz v. Sandoval Orozco,* No. 01–1022, 2005 WL 1501672 at *2 (D.P.R. June 24, 2005) (quoting *Bank of Waunakee v. Rochester Cheese Sales, Inc.,*

906 F.2d 1185, 1191 (7th Cir.1990)). *See also Mulero–Abreu, et al. v. Puerto Rico Police Department, et al.,* 675 F.3d 88, 94–95 (1st Cir.2012), authorizing reconsideration in cases of "manifest error of law."

The Federal Rules of Civil Procedure do not specifically provide for the filing of motions for reconsideration. *Sierra Club v. Tri–State Generation and Transmission Assoc., Inc.,* 173 F.R.D. 275, 287 (D.C.Col.1997); *Hatfield v. Board of County Comm'rs. for Converse County,* 52 F.3d 858, 861 (10th Cir.1995). Notwithstanding, any motion seeking the reconsideration of a judgment or order is considered as a motion to alter or amend a judgment under Fed.R.Civ.P. 59(e), if it seeks to change the order or judgment issued. *Id.* Hence, **"motions for reconsideration are 'extraordinarily remedies which should be used sparingly.'** " *Trabal Hernandez v. Sealand Services, Inc.,* 230 F.Supp.2d 258 (D.P.R.2002); *Nat'l. Metal Finishing Co. v. BarclaysAmerican/Commercial, Inc.,* 899 F.2d 119, 123 (1st Cir.1990). **"In practice, because of the narrow purposes for which they are intended, Rule 59(e) motions typically are denied."** (Emphasis ours). 11 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* §§ 2810.1 (2d ed.) (2012).

**"Stated another way, a motion for reconsideration is not properly grounded in a request for a district court to rethink a decision it has already made, rightly or wrongly."** *Williams v. City of Pittsburgh,* 32 F.Supp.2d 236, 238 (W.D.Pa.1998). A district court may, however, grant a party's motion for reconsideration in any of three situations: (1) the availability of new evidence not previously available, (2) an intervening change in controlling law, or (3) the need to correct a clear error of law or to prevent manifest injustice. *Dodge v. Susquehanna Univer-*

*sity*, 796 F.Supp. 829, 830 (M.D.Pa.1992). (Emphasis ours).

In *Dugdale, Inc. v. Alcatel–Lucent USA, Inc., et al.*, 2011 WL 3298504 (S.D.Indiana, August 11, 2011), the Court held:

> **A motion to reconsider is appropriate where the Court has misunderstood a party, where the Court has made a decision outside the adversarial issues presented to the Court by the parties, where the Court has made an error of apprehension (not of reasoning), where a significant new facts have been discovered.** *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir.1990). **A party seeking reconsideration cannot introduce new evidence that could have been discovered before the original motion or rehash previously rejected arguments.** *Caisse Nationale de Credit Agricole v. CBI Indus.*, 90 F.3d 1264, 1269 (7th Cir.1996). (Emphasis ours).

Plaintiff Acevedo disagrees with the findings of fact made by the Court. However, the core of this case is whether or not the instant action is time barred. The Court will not address the other arguments raised by Acevedo simply because if the action is time barred, it makes no sense to review the Court's determination, which in any event was decided on the merits. *See Order and Judgment*, Docket No. 60.

Acevedo alleges that "[u]nder the FTCA [Federal Tort Claims Act] plaintiff can filed [sic] a law suit before the USDC within 180 days after the agency final decision or after 180 days of the filing of the complaint without any agency decision." *See* Docket No. 61, ¶ 14. The Court refers Acevedo the wording of the used by the agency in the Notice of Appeal Rights. *See Order and Judgment*, Docket No. 60, page 6, and the references cited therein.

For easy reference, the Court hereby cites the wording of the document issued by the agency:

> You have the rights to appeal to the Equal Employment Opportunity Commission (EEOC) or to file a civil action in an appropriate United States District Court....

FILING AN APPEAL WITH EEOC

> You have the right to appeal this decision to **EEOC within 30 days of the day you receive this final decision**....

FILING A CIVIL ACTION

> You also have the right to file a civil action in an appropriate **United States District Court within 90 days after you receive this final decision if you do not appeal to EEOC, or within 90 days after receipt of EEOC's final decision on appeal. You may also file a civil action after 180 days from the date of filing an appeal with EEOC if there has been no final decision by EEOC**.... (Emphasis ours).

*See* Docket No. 53–2.

Hence, Acevedo has 90 days after he received the final decision of the agency, which he acknowledged receipt on July 1, 2009, to file the a civil action in the United States District Court for the District of Puerto Rico. Thus, the due date was September 29, 2009. The record of the Court shows that the transaction was entered on September 30, 2009 at 4:30 a.m. AST, and filed on September 30, 2009, Docket No. 1.

Acevedo alleges that his counsel was in South Korea and that there is a time difference of eleven hours. No further explanation is given, as well as how the difference in time is relevant to the date of the filing of the complaint. Defendants oppose plaintiffs' claim and object to it for lack of relevance, as the only relevant date is the

date when the complaint is filed in the appropriate jurisdiction. Hence, plaintiffs' claim is denied. Notwithstanding, the Court made a search in the internet to inquire on the time difference between South Korea and the United States. South Korea is 15 hours ahead of the United States. *See* www.timeanddate.com/worldclock/city; www.travelmath.com/time-change. Hence, the instant complaint was filed on September 30, 2009 at 4:30 a.m. AST, meaning that it was September 30, 2009 at 19:30 or 7:30 p.m. in South Korea. The end result is that the instant complaint is time barred for one day, as at the time the complaint was filed from South Korea, based on South Korea time was also time barred.

Lastly, Acevedo alleges that according to the Military Orders filed by plaintiffs' counsel in Civil No. 07–1942(DRD), Mr. Rodríguez was on Military Leave from September 11, 2009 until September 26, 2009, "returning to PR on October 6, 2009." *See* Docket No. 81 of Civil No. 07–1942(DRD). Acevedo makes reference to Exhibit I, Docket No. 81–1. A review of Exhibit I, "NATO TRAVEL ORDER," clearly shows: (a) "Date of departure 10 SEPTEMBER 2009," (b) "Expected date of return 26 SEPTEMBER 2009," and (c) *Motion Requesting Order, Counsel Out Of The Jurisdiction,* Docket No. 30, Civil No. 07–1942(DRD), counsel stated, "[w]e request from this Honorable Court not to issue orders, motions, and any other documents and if any of these are issue to grant us until our return to the jurisdiction the term to comply starting on or after September 29, 2009."

The Court is deeply troubled with plaintiffs' allegations on several grounds: (a) the alleged Military Order was never filed in the instant case, hence, the Court has to do counsel's homework and search another case for the Military Order in question;

(b) there is no evidence in the instant record of the referenced Military Order or evidence of the date when indeed plaintiffs' counsel indeed returned to the jurisdiction. It is settled that the courts do not have to do counsel's homework. A party "cannot expect a trial court to do his homework for him." *Cruz–Báez, et als. v. Negrón–Irizarry,* 220 F.Supp.2d 77, 79, n. 3 (D.P.R. 2002), citing *McCoy v. Massachusetts Institute of Technology,* 950 F.2d 13, 22 (1st Cir.1991). Rather, parties have an affirmative responsibility to put their best foot forward in an effort to present a legal theory that will support their claim. *Cruz-Báez,* 220 F.Supp.2d at 79, citing *McCoy,* 950 F.2d at 23.

Furthermore, the Court notes that even though the due date to file the instant complaint was September 29, 2009, plaintiff Acevedo acknowledged receipt of the agency's final decision on July1, 2009. Acevedo's counsel's Military Order was issued on "21 AUG 09." *See* Docket No. 81–1 of Civil No. 07–1942(DRD), attached hereto for easy reference. Mr. Rodríguez, Acevedo's counsel, was set to depart on "10 SEPTEMBER 2009," according to the Military Order of 21 AUG 09. *See* Docket No. 81–1 of Civil No. 07–1942(DRD). Hence, plaintiffs' counsel had since July 2, 2009 until September 9, 2009 to file the instant complaint, since counsel knew on or about "21 AUG 09" that he will be departing on Military Leave on September 10, 2009. The Court finds that Acevedo's counsel had plenty of time to file a timely complaint prior to his departure on September 10, 2009.

 The Court further finds that the doctrine of equitable tolling is not applicable to the instant case, *albeit* plaintiffs' counsel has not invoked this doctrine, simply because: (a) the doctrine of equitable tolling should be used sparingly; and (b) the doctrine "is not intended as a device to

rescue those who inexcusably sleep upon their rights." *See Torres Santiago v. United States,* 865 F.Supp.2d 168, 177 (D.P.R.2012), citing *Ramos–Martínez v. United States,* 638 F.3d 315, 323 (1st Cir. 2011). "Equitable tolling is a doctrine that 'provides that in exceptional circumstances, a statute of limitations may be extended for equitable reasons not acknowledged in the statute creating the limitations period.'" *Id.* at page 176. "The equitable tolling doctrine ... should only be invoked sparingly and only in appropriate instances." *Id.* citing *Ramos–Martínez,* 638 F.3d at 322. *See also Perocier–Morales v. United States,* 887 F.Supp.2d 399 (D.P.R.2012); *Luar Music Corp. v. Universal Music Group, Inc. and UMG Recordings, Inc.,* 847 F.Supp.2d 299 (D.P.R.2012).

██ In sum, the record is clear that according to the Military Order filed on another case, Civil No. 07–1942(DRD), specifically states that counsel Rodríguez' date of return was September 26, 2009, and the due date to file the complaint in the instant case was September 29, 2009. Further, counsel Rodríguez knew since July 1, 2009 that he had to file the complaint on or before September 29, 2009. Moreover, counsel Rodríguez knew since on or about August 21, 2009, that he was assigned on Military Leave departing on September 10, 2009 and returning on September 26, 2009. Hence, the plaintiff simply "slept upon his rights" expecting a "rescue" when he is not entitled thereto.

██ Hence, the Court understands that based upon the evidence on the record of the instant complaint, and the date and time of the electronic filing of the instant complaint, this action is time barred. The Court further finds that the doctrine of equitable tolling is inapplicable to the instant case, as the doctrine is not intended to protect parties that failed to litigate their rights diligently. "A court's power to invoke equitable tolling must be exercised case by case, and requires an analysis of the circumstances that were beyond the litigant's control that prevented [him] from promptly filing a ... Motion." *Torres Santiago v. United States,* 865 F.Supp.2d at 176 (citations omitted). "To carry this burden, the petitioner must show '(1) that he has been **pursuing his rights diligently,** and (2) that some extraordinary circumstance stood in his way and prevented timely filing.'" *Id.* citing *Ramos–Martínez,* 638 F.3d at 323 (emphasis ours) (quoting *Holland v. Florida,* —— U.S. ——, 130 S.Ct. 2549, 2562, 177 L.Ed.2d 130 (2010). Plaintiff Acevedo has failed to show that the applicability of the doctrine of equitable tolling is warranted, as he has failed to show that, even though he has plenty of time to timely filed Acevedo's complaint prior to September 29, 2009, the fact remains that counsel failed.

The Court further finds that the other arguments raised by plaintiffs are merely a rehash of the arguments raised in the opposition to summary judgment, which are meritless, as the Court is without jurisdiction to entertain the same, for the instant action is time barred.

**Conclusion**

For the reasons stated above, plaintiffs' *Motion to Reconsider,* Docket No. 61, is denied. This *Order* shall be notified to the Clerk of the United States Court of Appeals for the First Circuit, and the First Circuit Docket Clerk for our district.

IT IS SO ORDERED.