# United States Court of Appeals
## For the First Circuit

No. 09-1856

WILFREDO RAMOS-MARTÍNEZ,

Petitioner, Appellant,

v.

UNITED STATES OF AMERICA,

Respondent, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. José Antonio Fusté,  U.S. District Judge]

Before

Boudin, Circuit Judge,
Souter,* Associate Justice,
and Selya, Circuit Judge.

Linda Backiel, by appointment of the court, for appellant.
   Luke Cass, Assistant United States Attorney, with whom Rosa
Emilia Rodríguez-Vélez, United States Attorney, and Nelson Pérez-
Sosa, Assistant United States Attorney (Chief, Appellate Division),
were on brief, for appellee.

March 7, 2011

    *Hon. David H. Souter, Associate Justice (Ret.) of the Supreme
Court of the United States, sitting by designation.

**SELYA, <u>Circuit Judge</u>.** This case presents a question of first impression in this circuit: Is the limitations period for the filing of a federal prisoner's habeas petition under 28 U.S.C. § 2255(f) subject to equitable tolling? We answer this question affirmatively, but — even though the petitioner raises a serious question about whether he was unlawfully deprived of the services of a qualified interpreter — we go no further; the record as it stands is insufficient to allow us to resolve the merits of either the equitable tolling claim or the substantive claims that underlie the petition. Consequently, we vacate the order dismissing the petition and remand for further proceedings.

## I. BACKGROUND

We start by sketching the historical antecedents of this appeal. On April 16, 2002, petitioner-appellant Wilfredo Ramos-Martínez entered a straight guilty plea (i.e., a plea unencumbered by any agreement) to a charge of conspiracy to distribute multi-kilogram quantities of heroin, cocaine, and cocaine base (crack cocaine). <u>See</u> 21 U.S.C. §§ 841(a)(1), 846. The change-of-plea hearing took place before a visiting judge (Judge Carter). The petitioner explained that he had very little formal education and authorized his attorney to speak on his behalf. In response to a direct request, he agreed that he would notify the court if he was unable to understand any of its questions.

After the petitioner had been questioned at some length about his understanding of the proffered plea and its consequences, his counsel, David Román, informed the court that the petitioner "does not speak [E]nglish and this indictment is in [E]nglish." Román declared that he was fluent in Spanish and, therefore, had "explained all of it" to his client in Spanish. Notwithstanding this aposematic disclosure, the court did not inquire further into the petitioner's English language proficiency.

The record contains no indication that, prior to or during the hearing, the court asked the petitioner if he needed the services of an interpreter.[1] Neither the docket nor the transcript contains any notation showing that a court interpreter participated in the hearing.[2] Tellingly, the court's criminal minute sheet for the hearing does not identify any interpreter in the space provided for that information.

Some months passed before sentencing. By then, Judge Carter had returned home, and Judge Laffitte presided.

The disposition hearing took place on November 4, 2002. At that time, the petitioner requested "all the documents in the

---

[1] In contrast, in a change-of-plea hearing held on that same afternoon for one of the petitioner's codefendants, Maximo Salamo-Olmeda, Judge Carter inquired pointedly about the defendant's ability to communicate with the court without the help of an interpreter.

[2] In contrast, the record of the petitioner's sentencing indicates that he was "provided with the assistance of the Official Court Interpreter" for that proceeding.

-3-

case." He claimed that he repeatedly had asked Román to procure these papers, but to no avail. He also signaled his intention to file a section 2255 petition premised on Román's ineffective assistance. The district court summarily rejected the petitioner's entreaty and stated that it did not "find a scintilla, an iota of evidence to conclude that Mr. Román was ineffective." The court proceeded to sentence the petitioner to 480 months in prison.

The petitioner filed a pro se notice of appeal and requested the appointment of counsel. Attorney José Franco-Rivera ultimately appeared as the petitioner's appellate counsel.

In July of 2005, the petitioner wrote to the district court requesting information about the status of his appeal. The court provided the petitioner's attorney with a copy of this letter. The record does not indicate what action (if any) counsel may have taken.

A pro se motion to like effect was received by the district court in August of 2005. The clerk was directed to notify the petitioner of the status of his appeal. Within a matter of weeks, we affirmed the conviction and sentence. United States v. Ramos-Martínez, No. 02-2630 (Oct. 12, 2005) (unpublished order). The conviction became final on January 10, 2006 (when the 90-day period for seeking certiorari expired).

Within a month thereafter, the petitioner wrote to the clerk of the district court about the cost of acquiring a

-4-

transcript of his change-of-plea hearing.  The court directed the clerk to provide the petitioner with the requested information.  It is unclear whether that directive was implemented.

On March 27, 2007, the petitioner, acting pro se, filed a motion to reduce his sentence.  See  18 U.S.C. § 3582(c)(2).  Due to Judge Laffitte's retirement, the case was reassigned to Chief Judge Fusté, who denied the sentence reduction motion.  The petitioner appealed pro se, and we affirmed the challenged order.  United States v. Ramos-Martínez, No. 07-1973 (Jan. 28, 2008) (unpublished order).

Meanwhile, a series of other events were unfolding.  Although the record is scumbled, it appears that, at some point in 2005, the petitioner's mother paid a paralegal named José Rosado (ostensibly an associate of the petitioner's appellate counsel) several thousand dollars to assist in the preparation of a section 2255 petition.  The precise nature of the agreement with Rosado is not chronicled in the record, nor is it clear what (if anything) Rosado did during 2005 and 2006.  Prison records indicate that the petitioner placed a plethora of telephone calls to Rosado during October of 2006.  These efforts were thwarted as of October 13, 2006, when the petitioner's calls to that number were blocked by someone on the receiving end.  The record contains no explanation of why the calls were blocked.  No section 2255 petition prepared by Rosado was filed on the petitioner's behalf.

On April 1, 2008, the petitioner, acting pro se, filed a motion to vacate, set aside, or correct his sentence, pursuant to 28 U.S.C. § 2255. This petition alleged that his guilty plea had been obtained in violation of the Due Process Clause because his change-of-plea hearing was conducted without the assistance of an interpreter and that, as a result, his plea was involuntary, unintelligent, and unknowing. The petition further alleged that both the petitioner's trial and appellate attorneys had provided ineffective assistance through their respective failures to request an interpreter and to identify the absence of an interpreter as an issue on appeal. The petitioner filed companion motions seeking (i) equitable tolling of the limitations period limned in the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2255(f); (ii) leave to expand the record pursuant to Rule 7 of the Rules Governing Section 2255 Proceedings; (iii) an evidentiary hearing pursuant to Rule 8; and (iv) permission to institute the discovery processes generally available through Rule 6.

On April 16, 2008, the district court granted the motion to expand the record. The expanded record contains evidence regarding the events that transpired at the change-of-plea hearing, documents establishing lockdown periods affecting facilities in which the petitioner was incarcerated, information about his

relationship with Rosado, and materials evidencing his limited education and low proficiency in the English language.

After denying the petitioner's motions for discovery and for an evidentiary hearing, the district court rejected the section 2255 petition. Ramos-Martínez v. United States, No. 08-1388, 2009 WL 1299563, at *4 (D.P.R. May 6, 2009). The court based its ruling in material part on its appraisal of the protagonists who participated in the change-of-plea hearing:

> [A]s seasoned a judge as he is, Judge Carter would not have proceeded to take a plea from a defendant that could not communicate in English. Similarly, David Román, Defendant's lawyer, would not have allowed a non-English-speaking defendant to stand before Judge Carter without understanding the language of the colloquy. We, therefore, find that Petitioner was either able to speak English or was assisted by an interpreter during the plea colloquy.

Id. at *3. In the court's view, the transcript of the hearing showed that the petitioner "answer[ed] several questions with full sentences and never indicated that he could not understand the proceedings." Id. The court concluded that "[a]lthough the court would have done well to conduct a more thorough inquiry into Petitioner's comprehension of English, the record does not demonstrate that Petitioner had difficulty with English so as to trigger the requirements of the Court Interpreters Act." Id. In the process of reaching this conclusion, the court creatively interpreted Román's statement that the petitioner did not speak

English to mean that he "could not read and understand the indictment, not that he could not comprehend the court proceedings." Id. Having denied the petition on the merits, the court effectively sidestepped the equitable tolling issue.

On May 26, 2009, the petitioner, again acting pro se, filed a notice of appeal and a motion for a certificate of appealability (COA). The district court declined to issue a COA. The petitioner appealed that denial and, on December 10, 2009, we granted a COA as to three issues: (i) whether, under principles of equitable tolling, the section 2255 petition should be considered timely; (ii) whether, assuming timeliness, the district court erred in rejecting the petitioner's claim that his due process rights were violated when the district court failed to furnish an interpreter during his change-of-plea hearing; and (iii) whether, assuming timeliness, the district court erred in rejecting the petitioner's claim that his trial counsel's failure to request an interpreter at the change-of-plea hearing amounted to ineffective assistance. The COA delimits the frame of reference for this appeal.

## II. ANALYSIS

We divide our discussion into four segments. We begin with the availability of equitable tolling.

## A. **Availability of Equitable Tolling**.

"Congress enacted 28 U.S.C. § 2255 as a substitute for the traditional habeas remedy with respect to federal prisoners." Trenkler v. United States, 536 F.3d 85, 96 (1st Cir. 2008). The AEDPA establishes a one-year limitations period for habeas petitions filed by prisoners in federal custody. 28 U.S.C. § 2255(f). In general, this period runs from "the date on which the judgment of conviction becomes final." Id. § 2255(f)(1). Where, as here, Supreme Court review is not sought, "a judgment of conviction becomes final when the time expires for filing a petition for certiorari contesting the appellate court's affirmation of the conviction." Clay v. United States, 537 U.S. 522, 525 (2003). In a federal criminal case, a petition for a writ of certiorari must be filed within 90 days of entry of the judgment by a court of appeals. Sup. Ct. R. 13.1.

By this algorithm, the petitioner's conviction became final on January 10, 2006. The one-year limitations period for filing a section 2255 petition would, in the absence of tolling, have expired one year later on January 10, 2007. No petition was filed until April 1, 2008. Absent equitable tolling, then, the petition was untimely.

Equitable tolling is a doctrine that "provides that in exceptional circumstances, a statute of limitations 'may be extended for equitable reasons not acknowledged in the statute

creating the limitations period.'" Neverson v. Farquharson, 366 F.3d 32, 40 (1st Cir. 2004) (quoting David v. Hall, 318 F.3d 343, 345-46 (1st Cir. 2003)). The AEDPA does not make any explicit reference to equitable tolling. Neither the Supreme Court nor this court has conclusively resolved whether section 2255's limitations period may be equitably tolled. We answer that question today.

Despite the lack of controlling precedent, we do not write on a pristine page. The Supreme Court recently held that the limitations period under a kindred AEDPA provision (28 U.S.C. § 2244(d)), which applies to federal habeas petitions filed by prisoners in state custody, is subject to equitable tolling in appropriate instances. Holland v. Florida, 130 S. Ct. 2549, 2560 (2010). In reaching this conclusion, the Court considered whether the relevant statute of limitations is jurisdictional in nature, whether it contains sufficiently emphatic indications to overcome the presumption that equitable tolling applies, and whether the availability of equitable tolling would undermine the statute's fundamental purposes. Id. at 2560-62. In determining whether section 2255's built-in limitations period is subject to equitable tolling, we deem it appropriate to factor these same three integers into the decisional calculus.

To begin, section 2255(f)'s limitations period is couched in language virtually identical to that of section 2244(d).[3] Neither provision sets forth "'an inflexible rule requiring dismissal whenever' its 'clock has run.'" Id. at 2560 (quoting Day v. McDonough, 547 U.S. 198, 208 (2006)). We conclude, therefore, that section 2255(f) is non-jurisdictional. See id.; Day, 547 U.S. at 205; cf. Henderson v. Shinseki, 562 U.S. ___, slip op. at 8-9 (2011) (explaining that terms of statutory provision establishing deadline for seeking Veterans Court review contain "no clear indication that Congress wanted that provision to be treated as having jurisdictional attributes").

When found in federal statutes, non-jurisdictional limitations periods ordinarily are subject to a rebuttable presumption that equitable tolling is available. Holland, 130 S. Ct. at 2560. The Holland Court explained that this presumption is strengthened "by the fact that 'equitable principles' have traditionally 'governed' the substantive law of habeas corpus." Id. (quoting Munaf v. Geren, 553 U.S. 674, 693 (2008)). This rationale applies with undiminished force to section 2255 petitions.

---

[3] In relevant part, section 2244(d)(1) prescribes that a "1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court"; section 2255(f) indicates that a "1-year period of limitation shall apply to a motion under this section."

-11-

The Holland Court also acknowledged that because Congress enacted the AEDPA subsequent to the Court's announcement of the presumption in favor of equitable tolling, Congress likely was aware that courts, when interpreting the AEDPA, would do so with that presumption in mind. Id. at 2561. This reasoning counsels in favor of the availability of equitable tolling under section 2255(f).

The similarities do not end there. Like section 2244(d), the prescriptive period provided in section 2255(f) contains no "unusually emphatic" language or reiterations that might tend to rebut the presumption in favor of equitable tolling. See id. (contrasting section 2244(d) with statutes at issue in United States v. Beggerly, 524 U.S. 38 (1998), and United States v. Brockamp, 519 U.S. 347 (1997)). Moreover, a one-year limitations period is not especially long, and habeas corpus is a subject area in which equitable principles may comfortably flourish. See id. These considerations, which apply to both section 2244 and section 2255, strongly suggest the availability of equitable tolling. See id.

Last — but surely not least — Holland informs our examination of the AEDPA's basic objectives. There, the Court concluded that allowing equitable tolling in appropriate circumstances would not undercut the AEDPA's core principles. Id.

at 2562. This conclusion is not altered when the focus shifts from section 2244 to section 2255.

To say more on this issue would be supererogatory. Given the compelling textual similarity and congruent purpose that section 2244(d) and section 2255(f) share and the common heritage of both provisions as part of the same statutory framework, we hold that section 2255(f)'s one-year limitations period is subject to equitable tolling in appropriate instances. This holding comports with the reasoning of the Holland Court. It also brings this court into line with ten other courts of appeals that have reached the same conclusion. See United States v. Aguirre-Ganceda, 592 F.3d 1043, 1045 (9th Cir. 2010); Byers v. United States, 561 F.3d 832, 836 (8th Cir. 2009); United States v. Petty, 530 F.3d 361, 364 (5th Cir. 2008) (per curiam); United States v. Gabaldon, 522 F.3d 1121, 1124 (10th Cir. 2008); Solomon v. United States, 467 F.3d 928, 935 (6th Cir. 2006); United States v. Sosa, 364 F.3d 507, 512 (4th Cir. 2004); Baldayaque v. United States, 338 F.3d 145, 150 (2d Cir. 2003); United States v. Marcello, 212 F.3d 1005, 1010 (7th Cir. 2000); Sandvik v. United States, 177 F.3d 1269, 1271 (11th Cir. 1999) (per curiam); Miller v. N.J. State Dept. of Corr., 145 F.3d 616, 619 n.1 (3d Cir. 1998).

## B.  **Applying Equitable Tolling**.

That equitable tolling is available under section 2255(f) does not mean that it applies here.  We begin this latter inquiry with general principles.

A court's power to invoke equitable tolling must be exercised case by case.  See  Holland, 130 S. Ct. at 2563; Baggett v. Bullitt, 377 U.S. 360, 375 (1964).  "To preserve the usefulness of statutes of limitations as rules of law, equitable tolling should be invoked only 'sparingly.'"  Farquharson, 366 F.3d at 42 (quoting Irwin v. Dep't of Vet. Affairs, 498 U.S. 89, 96 (1990)).  In order to assuage this concern, we have recognized that equitable tolling is available only in cases in which "circumstances beyond the litigant's control have prevented [her] from promptly filing."  Cordle v. Guarino, 428 F.3d 46, 48 (1st Cir. 2005) (alteration in original) (quoting Lattimore v. Dubois, 311 F.3d 46, 55 (1st Cir. 2002)).  These background principles inform our inquiry.

"A habeas petitioner bears the burden of establishing the basis for equitable tolling."  Riva v. Ficco, 615 F.3d 35, 39 (1st Cir. 2010) (citing Holland, 130 S. Ct. at 2562).  To carry this burden, the petitioner must show "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing."  Holland, 130 S. Ct. at 2562 (quoting Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005)); see Trapp v. Spencer, 479 F.3d 53, 61 (1st Cir. 2007)

(listing additional factors that may influence whether or not to grant equitable tolling).

Because equitable decisions are made on a case-by-case basis, the determination of whether to toll a limitations period for equitable reasons is fact-intensive. See Holland, 130 S. Ct. at 2565. In the case at hand, the record is sparse concerning a number of salient facts relevant to equitable tolling. Given these gaps, we think it unwise to attempt to resolve the petitioner's equitable tolling claim here and now. To illustrate why we have reached this conclusion, we highlight some areas in which further development of the facts would prove useful.

Equitable tolling normally requires a finding of extraordinary circumstances. See, e.g., Riva, 615 F.3d at 39. In this case the extraordinary circumstances limned by the petitioner involve, among other things, the alleged failure of Rosado (a paralegal purportedly associated with the petitioner's appellate counsel and paid by the petitioner's family to prepare a section 2255 petition) to do what he had agreed to do. "[S]ometimes, professional misconduct [may] . . . amount to egregious behavior and create an extraordinary circumstance that warrants equitable tolling." Holland 130 S. Ct. at 2563; accord United States v. Martin, 408 F.3d 1089, 1093 (8th Cir. 2005); Baldayaque, 338 F.3d at 152; United States v. Wynn, 292 F.3d 226, 230 (5th Cir. 2002).

-15-

Here, however, the matter is not clear-cut. Cases in which professional failings have been judged sufficiently egregious to warrant a finding of extraordinary circumstances typically have involved misconduct by attorneys. See, e.g., Martin, 408 F.3d at 1093-96; Spitsyn v. Moore, 345 F.3d 796, 801 (9th Cir. 2003). Rosado is only a paralegal — but a paralegal who may have been working with (or for) an attorney. On the record before us, the relationship between Rosado and the lawyer is opaque. Better information on this point might well be significant in the equitable tolling calculus.

To compound the problem, the record does not speak with any degree of clarity to the specifics of Rosado's engagement by the petitioner. While the record indicates that the petitioner's relatives paid Rosado a substantial sum of money to prepare a section 2255 petition, it lacks any detail about the parameters of the relationship. The record does confirm that Rosado failed to respond to a myriad of telephone calls that the petitioner placed to him and that no Rosado-prepared petition was ever filed on the petitioner's behalf. The gaps, however, leave unanswered serious questions about the reasonableness vel non of the petitioner's reliance on Rosado and the likelihood that he was misled.

Equitable tolling is not intended as a device to rescue those who inexcusably sleep upon their rights. A habeas petitioner who seeks the balm of equitable tolling must show that he has

exercised "reasonable diligence" to protect his own interests. Holland, 130 S. Ct. at 2565 (citing Lonchar v. Thomas, 517 U.S. 314, 326 (1996)). Be that as it may, this requirement does not demand a showing that the petitioner left no stone unturned. Baldayaque, 338 F.3d at 153.

On this question, too, paucity of information is a matter of concern. Applying such a standard necessitates that an inquiring court have a sufficient factual basis to understand what choices the petitioner had and how he made those choices. See id.

The record here is too underdeveloped to allow this sort of reasoned analysis. We can tell that the petitioner made some efforts both to file a petition and to keep tabs as to what progress was being made. For example, he tried to obtain a transcript of his change-of-plea hearing, placed repeated telephone calls to Rosado, and submitted numerous pro se filings. But these efforts represent only part of the picture, and the record is silent as to when and by what means the petitioner became aware that Rosado was not performing his assigned task. What the petitioner knew and when he knew it are important in assessing his diligence. See, e.g., Barreto-Barreto v. United States, 551 F.3d 95, 101 (1st Cir. 2008). On this threadbare record, we simply cannot answer these questions.

In addition, both "extraordinary circumstances" and "reasonable diligence" depend on the totality of the circumstances.

-17-

See Trapp, 479 F.3d at 61.  In attempting to assemble the components of that totality, the petitioner points to considerations such as his limited education and lack of familiarity with the English language, the frustration of his efforts to learn English while incarcerated so that he could prepare his own petition, prison transfers and isolation due to lockdowns during the period between November of 2007 and February of 2008, and the like.  Although any one of these factors, standing alone, may be insufficient to excuse a failure to file a timely habeas petition, see, e.g., Akins v. United States, 204 F.3d 1086, 1089-90 (11th Cir. 2000) (declining to apply equitable tolling where petitioner was subject to lockdown but record indicated he had the opportunity to file his motion when lockdown was not in place), the whole may be greater than the sum of the parts.  The record is exiguous as to most of these points and, therefore, fuller development of them is desirable.

## C.  **The Substantive Claims**.

The district court did not dwell on the dearth of information about equitable tolling but, rather, elected to sidestep that issue and resolve the case on the merits.  This pragmatic approach can be utilitarian in some cases; a court occasionally may avoid addressing an enigmatic threshold issue by cutting directly to the merits.  See Lambrix v. Singletary, 520 U.S. 518, 525 (1997) (disclaiming any intention "to suggest that

-18-

the procedural-bar issue must invariably be resolved first" in a habeas case, and explaining that "[j]udicial economy might counsel" going directly to the merits if the merits were easily resolvable against the petitioner); <u>Pough</u> v. <u>United States</u>, 442 F.3d 959, 965 (6th Cir. 2006) (explaining that issue of timeliness of section 2255 motion may be bypassed and claims decided against petitioner on the merits); <u>cf.</u> <u>Pearson</u> v. <u>Callahan</u>, 129 S. Ct. 808, 818 (2009) (admonishing that judges "should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand"). But using this approach requires, at a bare minimum, that the outcome on the merits is both clear and favorable to the party advocating the threshold issue. See <u>Lambrix</u>, 520 U.S. at 525.

If it were obvious that the petition lacked merit, bypassing the equitable tolling inquiry would be a practical solution. That is not the case here. The petition raises serious constitutional questions, and the scanty record does not permit an authoritative resolution of those questions.

We need not wax longiloquent. For now, it suffices to say that the same types of informational shortfalls that counsel against deciding the equitable tolling question on this chiaroscuro record likewise counsel against deciding the constitutional claims without better development of the facts. We explain briefly.

The Court Interpreters Act, 28 U.S.C. § 1827(d)(1)(A), provides that a judge must arrange for the services of a qualified court interpreter if a criminal defendant "speaks only or primarily a language other than the English language." Once the court is on notice that a defendant's understanding of the proceedings may be inhibited by his limited proficiency in English, it has a duty to inquire whether he needs an interpreter. See, e.g., United States v. Zaragoza, 543 F.3d 943, 949 (7th Cir. 2008). In the case at hand, both of the petitioner's substantive claims — deprivation of due process and ineffective assistance of counsel — require an examination of whether the petitioner was entitled to, offered, or actually received the services of an interpreter at his change-of-plea hearing.

On the incomplete record that was available to the district court, it could not answer these crucial questions with any degree of assurance. The court's attempt to answer them, quoted supra at 7, is nothing more than conjecture. By like token, the court's facile reinterpretation of counsel's warning that the petitioner did not understand English is unconvincing. Speculating about such basic facts as whether Judge Carter informed the petitioner of his right to an interpreter, whether the petitioner's proficiency in the English language was so limited that an interpreter was needed, and whether the petitioner waived any entitlement is not a substitute for factfinding.

-20-

## D. **Next Steps**.

To this point, we have explained that the record as it stands is too tenebrous to permit a reasoned answer to any of the three questions framed in the COA. A further question remains: Where do we go from here?

A habeas petitioner has the burden of adducing facts sufficient to show both that his petition should be treated as timely and that he is entitled to relief. See, e.g., Riva, 615 F.3d at 39 (stating that "habeas petitioner bears the burden of establishing the basis for equitable tolling"); Gonzales-Soberal v. United States, 244 F.3d 273, 277 (1st Cir. 2001) (explaining that petitioner pressing ineffective assistance claim in section 2255 motion is required to establish entitlement to relief by preponderance of the evidence). But the situation in this case is highly idiosyncratic; the issues are tangled and the events at issue span many years. Moreover, the petitioner persistently requested an evidentiary hearing to develop the facts relevant to his claims. Those requests were uniformly denied.

An evidentiary hearing may be available in connection with a section 2255 petition. See Rule 8, Rules Governing Section 2255 Proceedings. While a petitioner "is not entitled to an evidentiary hearing as a matter of right," David v. United States, 134 F.3d 470, 477 (1st Cir. 1998), an evidentiary hearing sometimes serves the ends of justice. We think that this is such a case.

-21-

The circumstances are exceptional; and the situation is complicated by the nuanced nature of the questions presented, the inherent difficulty of obtaining reliable information needed to answer those questions, the petitioner's limited proficiency in the English language, the absence of counsel during several critical periods, the sheer passage of time, and the participation of multiple district judges.[4]

Habeas courts should be guided by equitable principles. See Holland, 130 S. Ct. at 2560. Here we believe that the fairest and best way to proceed is to direct the district court, on remand, to hold an evidentiary hearing. Such a hearing will help to provide a fuller picture of the relevant facts and the tangled issues.

## III. CONCLUSION

We need go no further. We decline to answer any of the questions posed in the COA due to the pervasive uncertainty that dogs the record. Accordingly, we vacate the judgment and remand to the district court for further development of the record with a view toward determining whether the petition is timely by reason of equitable tolling and, if so, whether the petitioner is entitled to

---

[4] Rule 4(a) of the Rules Governing Section 2255 Proceedings contemplates that the same judge who handles a petitioner's trial ordinarily should review his section 2255 petition. Here, however, through no fault of either the petitioner or the district court, a series of different judges were involved at different stages of the change-of-plea, sentencing, and post-conviction section 2255 proceedings.

-22-

relief on the merits of his substantive claims.  We take no view as to the appropriate resolution of any of these matters on remand.

**<u>Vacated and remanded</u>**.