# In the

# United States Court of Appeals

## For the Seventh Circuit

No. 12-1728

LORNA CLARKE,

*Petitioner-Appellant*,

*v.*

UNITED STATES OF AMERICA,

*Respondent-Appellee.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 11 C 7404—**John W. Darrah**, *Judge*.

ARGUED DECEMBER 12, 2012—DECIDED JANUARY 9, 2013

Before POSNER, ROVNER, and WOOD, *Circuit Judges*.

POSNER, *Circuit Judge*. This appeal from the denial of a motion under 28 U.S.C. § 2255 to vacate the petitioner's conviction involves the duty of a criminal defense lawyer to advise a client who is not an American citizen that her conviction may result in removal, and requires us to consider the conditions under which the breach of such a duty can be rectified in a postconviction proceeding.

A coworker in a Wal-Mart accounting office had persuaded the petitioner to join in a scheme to defraud their employer. The scheme netted the pair more than $250,000, of which the petitioner's share was, she admitted to the government, $50,000, though she was permitted to plead guilty, in April 2008, to just a single count in the indictment: a count that charged a fraudulent act that caused a loss to Wal-Mart of $8,000. She was sentenced two years later to 14 months in prison to be followed by two years of supervised release and to pay restitution to Wal-Mart, jointly and severally with her codefendant, of $262,000. She did not appeal.

Although a lawful permanent resident of the United States at the time of her conviction and sentence, the petitioner was not a U.S. citizen. The Immigration and Naturalization Act makes an alien who is "convicted of an aggravated felony at any time after admission . . . deportable," 8 U.S.C. § 1227(a)(2)(A)(iii), and defines "aggravated felony" to include among other offenses "an offense that involves fraud or deceit in which the loss to the victim or victims exceeds $10,000." § 1101(a)(43)(M)(i). The loss to the victim, Wal-Mart, was much greater. And since it was caused by "an overarching fraudulent scheme that encompassed the individual counts in the indictment," *Knutsen v. Gonzales*, 429 F.3d 733, 737 (7th Cir. 2005), the petitioner's being allowed to plead to a single count involving only an $8000 loss was not inconsistent with her having committed an offense that resulted in a loss of more than $10,000. *Nijhawan v. Holder*, 557 U.S. 29 (2009); *Marti-*

*nez v. Mukasey*, 508 F.3d 255, 260 (5th Cir. 2007); *Khalayleh v. INS*, 287 F.3d 978, 980 (10th Cir. 2002). She thus was convicted of an aggravated felony within the meaning of the immigration law. It's true that the passage we just quoted from our opinion in *Knutsen* was describing rather than endorsing the holding in the *Khalayleh* case. But that was before the Supreme Court in *Nijhawan* laid the issue to rest.

Removal proceedings were instituted in August 2011, two months after the petitioner completed her prison sentence. In October she filed her section 2255 motion asking that her conviction be set aside (so that she could either negotiate a different plea or go to trial) on the ground that neither the judge nor her lawyer had advised her that she could be removed if convicted. Her lawyer had told her there might be "immigration consequences" if she pleaded guilty and thus was convicted, but he had not specified those consequences. Also in October an immigration judge ordered her removed to Jamaica, her country of origin, and the order has been executed.

Section 2255(f)(1) provides that the one-year statute of limitations for filing a section 2255 motion ordinarily begins to run on "the date on which the judgment of conviction becomes final." But section 2255(f)(4) allows it to begin to run later, namely on "the date on which the facts supporting the claim or claims presented [by the motion] could have been discovered through the exercise of due diligence." Section 2255(f)(4) is thus effectively a tolling statute.

A lawyer's failure to advise his client concerning a critical consequence of conviction can be a "fact" supporting a claim of ineffective assistance of counsel. See *Owens v. Boyd*, 235 F.3d 356, 359-60 (7th Cir. 2000); cf. *Johnson v. United States*, 544 U.S. 295, 304-05 (2005). But in this case it was a fact that could have been "discovered through the exercise of due diligence" well within a year after the petitioner's guilty plea in August 2008, and it was not until October 2011 that she filed her section 2255 motion. When the lawyer had "mentioned possible immigration consequences" to her before she pleaded guilty, this placed her on notice that she might be removed. She knew she was not a citizen. (Improbable as it may seem, we can imagine a case in which a defendant reasonably but mistakenly believed herself to be a citizen and therefore immune from removal unless she was a naturalized citizen who had done something exposing her to denaturalization. But that is not this case.) What other "immigration consequences" would conviction of a criminal offense be likely to have for her?

Her conviction did not become final until she was sentenced, however, and the sentence did not become final until the deadline for filing a notice of appeal expired, and that was in May 2010. Although she had notice of her removability before then, a section 2255 motion is a motion to set aside the sentence, see section 2255(a), so the one-year statute of limitations does not begin to run until the defendant is sentenced and the deadline for appeal expires. See, besides the *Johnson* and *Owens* cases cited above, *Allen v. Hardy*, 478 U.S. 255, 258 n. 1 (1986), and *Moshier v. United States*, 402 F.3d

116, 118 (2d Cir. 2005). Still, the petitioner was sentenced (and the deadline for appeal expired) more than a year before she filed her motion. And because the sentence was irrelevant to the possibility of removal—it is the conviction of an aggravated felony rather than the sentence that makes the defendant removable—the date of her guilty plea was the date on which her duty of diligent inquiry arose. See *Alaka v. Attorney General*, 456 F.3d 88, 107 (3d Cir. 2006). She had loads of time to discover the possible immigration consequences of her plea of guilty.

The dependence of the statute of limitations on the petitioner's exercise of due diligence is equivalent to a rule of "inquiry notice," see, e.g., *Doe v. St. Francis School District*, 694 F.3d 869, 872 (7th Cir. 2012); *Nicholson v. Pulte Homes Corp.*, 690 F.3d 819, 826 (7th Cir. 2012); *Ford v. Gonzalez*, 683 F.3d 1230, 1236 (9th Cir. 2012), and the petitioner acquired such notice when her lawyer told her that her pleading guilty might have "immigration consequences." That was an ominous warning, and if she didn't understand it she could have asked her lawyer what those consequences might be and if he didn't know the answer he presumably would have inquired. He could have asked the probation service, since the presentence investigation report stated that a "felony conviction may make her amenable to removal proceedings." Apparently the petitioner asked no one what "immigration consequences" she would be facing were she convicted. In all likelihood she didn't think it necessary to ask because she knew full well what they would be. But all that matters is that she was not diligent

in trying to discover what they would be. There is no suggestion that she has any difficulties with the English language that might have impeded discovery. She had lived in the United States for many years, and anyway English is the official language of Jamaica, though not all Jamaicans are fluent in it.

This case is not like *Padilla v. Kentucky*, 130 S. Ct. 1473 (2010), where the defendant's lawyer told the defendant not to worry—he wouldn't be removed if he pleaded guilty to a drug offense, and therefore he pleaded guilty to it, though the immigration law was clear, as in this case (actually clearer), that he would be deported. See 8 U.S.C. § 1227(a)(2)(B)(i). Our petitioner's lawyer did not mislead her, as Padilla's lawyer misled Padilla; and while the lawyer could have been more precise, he said enough to put her on notice, and that defeats her postconviction challenge.

True, the statute of limitations in section 2255 is just that—a statute of limitations, not a jurisdictional limitation, and so it can be tolled. *Nolan v. United States*, 358 F.3d 480, 483-84 (7th Cir. 2004); *Ramos-Martinez v. United States*, 638 F.3d 315, 323-24 (1st Cir. 2011); *Holland v. Florida*, 130 S. Ct. 2549, 2562-63 (2010). There are two principal tolling doctrines. One is equitable estoppel, which comes into play "if the defendant takes active steps to prevent the plaintiff from suing in time, as by promising not to plead the statute of limitations" as a defense. *Cada v. Baxter Healthcare Corp.*, 520 F.2d 446, 450-51 (7th Cir. 1990). It has no application to this case. The other doctrine is "equitable tolling. It permits a

plaintiff to avoid the bar of the statute of limitations if *despite all due diligence* he is unable to obtain vital information bearing on the existence of his claim." *Id*. at 451 (emphasis added); see also *Ramos-Martinez v. United States*, *supra*, 638 F.3d at 323-24. The petitioner cannot avail herself of equitable tolling because she flunked diligence. Nor is any other tolling doctrine available to her.

And if her lawyer did render ineffective assistance, there was no harm done and so there is no injustice as a result of enforcing the statute of limitations against her. For she had no defense to the charge of fraud. Had she stood trial she would have been convicted and in all likelihood received a heavier sentence (she received a very light sentence)—and her status as a removable immigrant would not have been affected because the conviction would have been of an aggravated felony, as her guilty plea was.

As a detail, we note the futility of her alternative characterization of her petition as one seeking coram nobis. That is a postconviction remedy, equivalent to habeas corpus or (for persons convicted in federal court) section 2255, for petitioners who have served their sentences and so cannot invoke either of those remedies but who as a result of having been convicted are laboring under some serious civil disability that they'd like to eliminate by setting aside their conviction—and removal from the United States is serious, civil, and a consequence of the petitioner's conviction. But when she filed her petition, she was under supervised release, and so section 2255 was available to (and of course invoked

by) her, because supervised release is classified as a form of custody. E.g., *Virsnieks v. Smith*, 521 F.3d 707, 717-18 (7th Cir. 2008); *Kusay v. United States*, 62 F.3d 192, 193 (7th Cir. 1995); cf. *Jones v. Cunningham*, 371 U.S. 236, 242-43 (1963). Coram nobis was therefore unavailable to her. *Godoski v. United States*, 304 F.3d 761, 763 (7th Cir. 2002); *United States v. Baptiste*, 223 F.3d 188, 189-90 (3d Cir. 2000) (per curiam); *United States v. Brown*, 117 F.3d 471, 474-75 (11th Cir. 1997). For "where a statute specifically addresses the particular issue at hand, it is that authority, and not the All Writs Act, that is controlling. Although that Act empowers federal courts to fashion extraordinary remedies when the need arises, it does not authorize them to issue ad hoc writs whenever compliance with statutory procedures appears inconvenient or less appropriate." *Pennsylvania Bureau of Correction v. United States Marshals Service*, 474 U.S. 34, 43 (1985). There is no coram nobis statute parallel to section 2255, so by invoking coram nobis the petitioner is impermissibly trying to avoid the one-year statute of limitations in that section.

AFFIRMED.