Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
03/01/2019 09:06 AM CST

State of Nebraska, appellant and cross-appellee,
v. Jedo J. Jerke, appellee and cross-appellant.

___ N.W.2d ___

Filed March 1, 2019.    No. S-18-426.

1. **Constitutional Law: Postconviction: Pleas.** The common-law procedure for withdrawing a plea after conviction recognized in *State v. Gonzalez*, 285 Neb. 940, 830 N.W.2d 504 (2013), is available only when (1) the Nebraska Postconviction Act is not, and never was, available as a means of asserting the ground or grounds justifying withdrawing the plea and (2) a constitutional right is at issue.

2. **Judgments: Appeal and Error.** When dispositive issues on appeal present questions of law, an appellate court has an obligation to reach an independent conclusion irrespective of the decision made by the court below.

3. **Postconviction: Pleas.** Whether the common-law procedure for withdrawing a plea after conviction recognized in *State v. Gonzalez*, 285 Neb. 940, 830 N.W.2d 504 (2013), is available presents a question of law.

4. **Effectiveness of Counsel: Proof: Time.** The factual predicate for a claim of ineffectiveness of counsel concerns whether the important objective facts could reasonably have been discovered, not when the claimant should have discovered the legal significance of those facts.

5. **Effectiveness of Counsel: Proof.** When considering the factual predicate of a claim of ineffective assistance of counsel based on the failure to advise of deportation consequences, the important objective facts are (1) knowledge of what trial counsel did and did not advise the defendant and (2) the existence of the applicable deportation law.

6. **Postconviction: Pleas: Proof.** The unavailability of the Nebraska Postconviction Act is not an affirmative defense; it is a material element that must be pled and proved by a defendant seeking to use the procedure for withdrawing a plea after conviction recognized in *State v. Gonzalez*, 285 Neb. 940, 830 N.W.2d 504 (2013).

Appeal from the District Court for Hall County: TERESA K. LUTHER, Judge. Reversed and remanded with directions.

Douglas J. Peterson, Attorney General, and James D. Smith, and Martin R. Klein, and Katherine J. Doering, Deputy Hall County Attorneys, for appellant.

Mark Porto, of Porto Law Office, for appellee.

Kevin Ruser, of University of Nebraska College of Law Immigration Clinic, and David Shea and Damon Hudson, Senior Certified Law Students, for amicus curiae University of Nebraska College of Law Immigration Clinic.

HEAVICAN, C.J., MILLER-LERMAN, CASSEL, STACY, FUNKE, PAPIK, and FREUDENBERG, JJ.

STACY, J.

In 2012, Jedo J. Jerke entered a no contest plea to a charge of second degree assault. He was convicted and sentenced to a term of 4 to 6 years' imprisonment. After completing his sentence, Jerke moved to vacate the sentence and withdraw the plea pursuant to the common-law procedure recognized in *State v. Gonzalez*,[1] arguing his trial counsel was ineffective for failing to advise him before he entered his plea that second degree assault was a deportable offense. The district court granted Jerke's motion, and the State appeals. Because we conclude the common-law procedure is not available to Jerke as a matter of law, we reverse the district court's order and remand the cause with directions to dismiss.

## FACTS

Jerke is from South Sudan, Africa, and came to the United States in 2006 as a political refugee. He is not, and never has been, a U.S. citizen.

---

[1] *State v. Gonzalez*, 285 Neb. 940, 830 N.W.2d 504 (2013).

In March 2012, Jerke was charged with two counts of assault in the second degree and one count of criminal impersonation. At the time, the assault charges were Class III felonies carrying a sentence of 1 to 20 years' imprisonment. Jerke informed his appointed counsel of his immigration status when counsel originally visited him in jail. Under federal law, a crime of violence for which a sentence of 1 year or more is imposed is an "aggravated felony" and a deportable offense.[2] Counsel did not advise Jerke of this at any time.

Jerke originally entered not guilty pleas to each of the charges, and a bench trial began August 6, 2012. After the State called its first witness, who described an intoxicated Jerke striking him in the mouth with a glass tequila bottle and knocking out several of his teeth, Jerke informed the court he wished to accept the State's plea offer and enter a no contest plea to one count of second degree assault. The plea colloquy included an advisement pursuant to Neb. Rev. Stat. § 29-1819.02(1) (Reissue 2016), which provides:

> Prior to acceptance of a plea of guilty or nolo contendere to any offense punishable as a crime under state law, except offenses designated as infractions under state law, the court shall administer the following advisement on the record to the defendant:
>
> IF YOU ARE NOT A UNITED STATES CITIZEN, YOU ARE HEREBY ADVISED THAT CONVICTION OF THE OFFENSE FOR WHICH YOU HAVE BEEN CHARGED MAY HAVE THE CONSEQUENCES OF REMOVAL FROM THE UNITED STATES, OR DENIAL OF NATURALIZATION PURSUANT TO THE LAWS OF THE UNITED STATES.

The court accepted Jerke's no contest plea, and subsequently sentenced him to imprisonment for a term of 4 to 6 years.

While Jerke was serving his sentence, he learned he did not qualify for community work release, because he had an

---

[2] 8 U.S.C. §§ 1101(a)(43)(F) and 1227(a)(2)(A)(iii) (2012).

"immigration hold." Jerke did not investigate the nature of the immigration hold during the term of his incarceration or upon his release from prison in 2015.

[1] In November 2017, Jerke learned from immigration authorities that he would be deported based on his assault conviction. He then moved to vacate his conviction and withdraw his plea pursuant to this court's holding in *Gonzalez*.[3] That case recognized a common-law procedure under which a defendant may, in very limited circumstances, move to vacate a conviction and withdraw a plea after the conviction has become final. According to *Gonzalez*:

> This procedure is available only when (1) the [Nebraska Postconviction] Act[4] is not, and never was, available as a means of asserting the ground or grounds justifying withdrawing the plea and (2) a constitutional right is at issue. In sum, this common-law procedure exists to safeguard a defendant's rights in the very rare circumstance where due process principles require a forum for the vindication of a constitutional right and no other forum is provided by Nebraska law.[5]

In his motion, Jerke alleged his Sixth Amendment right to counsel was violated when his trial counsel failed to advise him of the deportation consequences of his plea-based conviction. Jerke alleged this constituted ineffective assistance of counsel pursuant to the U.S. Supreme Court's opinion in *Padilla v. Kentucky*.[6]

After conducting an evidentiary hearing, the district court granted Jerke's motion. In opposing the motion, the State had argued that Jerke could have raised his claims under the Nebraska Postconviction Act during the period of his

---

[3] *Gonzalez, supra* note 1.

[4] Neb. Rev. Stat. §§ 29-3001 to 29-3004 (Reissue 2016).

[5] *Gonzalez, supra* note 1, 285 Neb. at 949-50, 830 N.W.2d at 511.

[6] *Padilla v. Kentucky*, 559 U.S. 356, 130 S. Ct. 1473, 176 L. Ed. 2d 284 (2010).

incarceration, and thus could not bring a common-law claim under *Gonzalez*. But the court found the State had waived this argument by not filing a motion to dismiss.

The court entered an order that vacated the judgment of conviction and sentence, allowed Jerke to withdraw his plea, and set the matter for further hearing. The State filed this appeal, and Jerke cross-appealed. We granted Jerke's motion to bypass the Nebraska Court of Appeals.

## ASSIGNMENTS OF ERROR

The State assigns, restated, that the district court erred in (1) granting Jerke's common-law motion, because Jerke had a remedy under the Nebraska Postconviction Act, and (2) finding trial counsel rendered ineffective assistance.

On cross-appeal, Jerke asks this court to overrule *State v. Mamer*[7] and hold instead that the factual predicate of an ineffective assistance of counsel claim based on *Padilla* does not arise until a reasonable defendant learns the actual immigration consequences of his or her plea-based conviction.

## STANDARD OF REVIEW

[2] When dispositive issues on appeal present questions of law, an appellate court has an obligation to reach an independent conclusion irrespective of the decision made by the court below.[8]

## ANALYSIS

[3] Whether the common-law procedure recognized in *Gonzalez* is available to Jerke presents a question of law. We begin our analysis with an overview of the *Gonzalez* holding.

### STATE v. GONZALEZ

Our 2013 decision in *Gonzalez* recognized that in Nebraska, there are two statutory avenues available to a defendant seeking

---

[7] *State v. Mamer*, 289 Neb. 92, 853 N.W.2d 517 (2014).

[8] *State v. Zlomke*, 268 Neb. 891, 689 N.W.2d 181 (2004).

to withdraw a plea after his or her conviction has become final. The first is found in § 29-1819.02. That statute requires that before accepting a plea of guilty or nolo contendere, a court must give the defendant a statutory advisement regarding the possible immigration consequences of conviction.[9] If the required advisement is not given, the statute allows the defendant to move to vacate the judgment, withdraw the plea, and enter a plea of not guilty.[10] This statutory remedy is available even after the defendant has served his or her sentence.[11] Here, the record shows a § 29-1819.02 advisory was given to Jerke, and no one contends the remedy of § 29-1819.02(2) is available to him.

The second statutory avenue is the Nebraska Postconviction Act.[12] Enacted to protect constitutional rights, this act allows a defendant "in custody under sentence" claiming a right to be released due to denial or infringement of a constitutional right to move to have his or her conviction and sentence vacated or set aside.[13] A postconviction motion is not intended to be concurrent with any other remedy existing in the courts of this state, so if a postconviction motion states facts which, if true, would constitute grounds for relief under another remedy, the motion will be dismissed without prejudice.[14] A postconviction motion must be filed within 1 year of the triggering events set out in § 29-3001(4).[15]

After *Gonzalez* recognized these two statutory means of collaterally attacking a final criminal conviction, it specifically addressed whether a "common-law procedure also authorize[s]

---

[9] § 29-1819.02(1).

[10] § 29-1819.02(2).

[11] *State v. Garcia*, 301 Neb. 912, 920 N.W.2d 708 (2018).

[12] §§ 29-3001 to 29-3004.

[13] See § 29-3001(1).

[14] See, § 29-3003; *Gonzalez, supra* note 1.

[15] See *State v. Torres*, 300 Neb. 694, 915 N.W.2d 596 (2018).

[a] motion to withdraw [a] plea after [the] conviction ha[s] become final."[16] The court in *Gonzalez* framed the issue as "whether a court has jurisdiction to consider" a common-law motion to withdraw a plea "when the motion is filed after the underlying conviction is final."[17]

*Gonzalez* recognized that on at least two prior occasions, this court had refused to recognize a nonstatutory procedure whereby defendants could raise claims related to criminal cases.[18] In *State v. El-Tabech*,[19] we held there was no procedure by which a defendant convicted of murder could seek state-funded DNA testing when the time period for filing a motion for new trial based on newly discovered evidence had passed, and therefore, we affirmed the district court's dismissal of the defendant's motion seeking such. And in *State v. Louthan*,[20] we held a defendant could not, in a separate proceeding, challenge the validity of a prior conviction for purposes of sentence enhancement, in part because no statute authorized the defendant to do so. For the sake of completeness, we note that after our decision in *Gonzalez*, we held in *State v. Smith*[21] that the district court correctly dismissed for lack of jurisdiction a defendant's motion to vacate his sentence based on an allegation it was unconstitutional, reasoning the motion was not authorized by law, because the Nebraska Postconviction Act was the defendant's sole remedy to collaterally attack his conviction and sentence.

*Gonzalez* distinguished the procedures at issue in *El-Tabech* and *Louthan* by reasoning they were not constitutionally

---

[16] *Gonzalez, supra* note 1, 285 Neb. at 946, 830 N.W.2d at 509.

[17] *Id*. at 944, 830 N.W.2d at 507.

[18] See, *State v. El-Tabech*, 259 Neb. 509, 610 N.W.2d 737 (2000); *State v. Louthan*, 257 Neb. 174, 595 N.W.2d 917 (1999).

[19] *El-Tabech, supra* note 18.

[20] *Louthan, supra* note 18.

[21] *State v. Smith*, 288 Neb. 797, 851 N.W.2d 665 (2014).

mandated. In contrast, *Gonzalez* reasoned that in certain circumstances, a common-law procedure for a conviction to be vacated and a plea withdrawn was constitutionally mandated. *Gonzalez* then proceeded to identify those circumstances and articulate the limiting principles that govern that common-law procedure.

*Gonzalez* explained the common-law procedure is civil in nature and is available in only extremely limited circumstances. It emphasized that the Nebraska Postconviction Act is the primary procedure for bringing collateral attacks on final criminal convictions and made clear that where a "defendant has a collateral attack that could be asserted under the [a]ct, that [a]ct is his or her sole remedy."[22] Notably, *Gonzalez* held that "[o]nly if a defendant does not and never could have asserted the basis of his or her collateral attack under the [a]ct may he or she invoke the common-law procedure and move to withdraw a plea after the conviction has become final."[23]

Since our holding in *Gonzalez*, this court has considered several cases in which a defendant sought to use the common-law procedure.[24] Because Jerke urges us to reconsider our holding in one of those cases, we address it next.

## STATE V. MAMER

In *Mamer*,[25] a defendant pled guilty to a felony charge and was convicted and sentenced. Due to credit for time served, he was incarcerated only for a few weeks following the conviction. Several months after he was released, he filed a motion seeking to vacate his plea and set aside his conviction pursuant to the procedure set forth in *Gonzalez*. The motion alleged that he was not a U.S. citizen and that his trial counsel

---

[22] *Gonzalez, supra* note 1, 285 Neb. at 949, 830 N.W.2d at 510.

[23] *Id.*

[24] See, *State v. Merheb*, 290 Neb. 83, 858 N.W.2d 226 (2015); *Mamer, supra* note 7; *State v. Yuma*, 286 Neb. 244, 835 N.W.2d 679 (2013).

[25] *Mamer, supra* note 7.

provided ineffective assistance of counsel under *Padilla*[26] by not advising him before he entered his plea that the conviction was a deportable offense. The motion did not address why the defendant had not raised the *Padilla* claim via a motion for postconviction relief during the time he was incarcerated.

The State moved to dismiss the motion, and we treated that motion as one to dismiss for failure to state a claim on which relief could be granted. We then addressed the question whether, assuming all the allegations in the motion were true, the defendant had stated a common-law claim to withdraw his plea and vacate his sentence. Part of our analysis focused on whether the defendant had alleged facts, or could allege facts, showing the Nebraska Postconviction Act was never available to vindicate his ineffective assistance of counsel claim.

This analysis involved determining when the "factual predicate" of the defendant's ineffective assistance of counsel claim "could have been discovered through the exercise of due diligence."[27] We framed the question as when, in the exercise of due diligence, the defendant "could have discovered the important objective facts concerning both trial counsel's deficient conduct and the resulting prejudice."[28]

[4,5] The factual predicate for a claim concerns whether the important objective facts could reasonably have been discovered, not when the claimant should have discovered the legal significance of those facts.[29] And when considering the factual predicate of a claim of ineffective assistance of counsel based on the failure to advise of deportation consequences, we found the important objective facts are (1) knowledge of what trial counsel did and did not advise the defendant and (2) the existence of the applicable deportation law.[30]

---

[26] *Padilla, supra* note 6.

[27] See § 29-3001(4)(b).

[28] *Mamer, supra* note 7, 289 Neb. at 99, 853 N.W.2d at 524.

[29] *Id.*

[30] See *id.*

We rejected the suggestion that the defendant could not have discovered the factual predicate of his ineffective assistance claim until he learned the actual immigration consequences of his plea. Instead, we found that because the district court had given the § 29-1918.02 advisement before accepting the plea, the defendant could have, in the exercise of reasonable diligence, discovered the consequences of the applicable deportation law while he was incarcerated. As such, we found he was unable to "demonstrate an essential element of his [common-law] claim: that he had no other means to vindicate the constitutional right at issue."[31] We thus held the district court properly granted the State's motion to dismiss.

### Unavailability of Nebraska Postconviction Act Cannot Be Waived

Jerke's motion seeking to vacate his sentence and withdraw his plea, like the motion at issue in *Mamer*, did not allege he was unable to bring his ineffective assistance of counsel claim via the Nebraska Postconviction Act during the time he was incarcerated. But unlike *Mamer*, the State here did not move to dismiss the motion on that basis. Instead, the State argued to the district court that Jerke was "procedurally barred" from bringing a common-law claim under *Gonzalez*, because he could have brought an ineffective assistance of counsel claim under the Nebraska Postconviction Act while he was in custody. The district court, relying on *Mamer*, found the State had waived this argument by not filing a motion to dismiss. The State assigns this as error, and we agree.

In *Mamer*, we addressed the applicability of the Nebraska Postconviction Act in the context of the State's motion to dismiss, because that is how the issue was framed by the parties. But properly understood, the applicability of the act is not an affirmative defense to a *Gonzalez* common-law motion

---

[31] *Id.* at 101, 853 N.W.2d at 525.

seeking to vacate a conviction and withdraw a plea. Rather, it is something the defendant must plead and prove in order to utilize the common-law procedure at all.

As our case law suggests, there is a hierarchy of sorts in the available remedies for defendants seeking to vacate a conviction and withdraw a plea based on a *Padilla*-type claim. A defendant who has not been given the statutory advisement required by § 29-1819.02 must seek relief under that statute. When the advisement was given and the statutory relief of § 29-1819.02 is unavailable, a defendant must seek relief under the Nebraska Postconviction Act. And only when the act is not, and never was, available, is the common-law procedure under *Gonzalez* available.

[6] Here, the trial court's reasoning effectively construed the availability of postconviction relief as an affirmative defense to be raised by the State. But the unavailability of the Nebraska Postconviction Act is not an affirmative defense; it is a material element that must be pled and proved by a defendant seeking to use the *Gonzalez* procedure. This error of law prevented the trial court from considering an essential element of Jerke's common-law claim under *Gonzalez*.

### Nebraska Postconviction Act Was Available to Jerke

Jerke contends the Nebraska Postconviction Act was not available to him as a means of pursuing his ineffective assistance of counsel claim, because he did not learn he was being deported based on his conviction until after he was released from custody. This argument requires analysis of when Jerke could have discovered the factual predicate of his constitutional claim.

The Nebraska Postconviction Act contains a 1-year limitations period, which runs from the later of

> (a) The date the judgment of conviction became final by the conclusion of a direct appeal or the expiration of the time for filing a direct appeal;

(b) The date on which the factual predicate of the constitutional claim or claims alleged could have been discovered through the exercise of due diligence;

(c) The date on which an impediment created by state action, in violation of the Constitution of the United States or the Constitution of Nebraska or any law of this state, is removed, if the prisoner was prevented from filing a verified motion by such state action;

(d) The date on which a constitutional claim asserted was initially recognized by the Supreme Court of the United States or the Nebraska Supreme Court, if the newly recognized right has been made applicable retroactively to cases on postconviction collateral review; or

(e) August 27, 2011.[32]

In his cross-appeal, Jerke asks us to overrule *Mamer* and reexamine what constitutes the factual predicate of an ineffective assistance of counsel claim based on *Padilla*. He specifically asks us to find that the factual predicate of his claim should be (1) knowledge of what his trial counsel advised him and (2) knowledge that he would be deported based on his plea-based conviction. He acknowledges this is inconsistent with *Mamer*, but suggests the *Mamer* analysis is generally unfair because it expects a defendant

> to not only act as a more effective attorney than the one he had by maneuvering through the federal immigration statutes and correctly analyzing the impact of his criminal conviction on his immigration status, but . . . to do so at a time when he ha[s] no reason to suspect there was a problem because deportation proceedings had not been initiated.[33]

Jerke argues that the "logical effect" of *Mamer* is "to place an obligation on an untrained defendant to generate the wherewithal to perform as a more competent attorney than his

---

[32] § 29-3001(4).

[33] Brief for appellee on cross-appeal at 17.

actual attorney, and to do so from within the confines of prison at a time when he has no reason to suspect a problem to begin with."[34]

Jerke's argument mischaracterizes our holding in *Mamer*. Most notably, *Mamer* did not hold that the factual predicate of an ineffective assistance of counsel claim exists at a time when a defendant has "no reason to suspect there was a problem." To the contrary, *Mamer* held that the factual predicate could have been discovered through the exercise of reasonable diligence once the defendant was advised by the trial court, pursuant to § 29-1819.02(1), that a conviction may result in immigration consequences. *Mamer* reasoned that from and after the time of that advisement, the defendant knew of a possible problem with his immigration status and, with the exercise of due diligence, could have discovered and raised the ineffective assistance of trial counsel argument during the period of incarceration.

With the exception of *Mamer*, we have not directly analyzed the factual predicate language of § 29-3001(4)(b) in the context of an ineffective assistance of counsel claim. It is notable, however, that language in two related federal statutes is nearly identical. First, 28 U.S.C. § 2255(f)(4) (2012) states the 1-year limitations period for a motion to vacate a criminal conviction starts to run from "the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence." And 28 U.S.C. § 2244(d)(1)(D) (2012) requires a state prisoner who wants collateral relief from a federal court to file a petition within 1 year of "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence."

Contrary to Jerke's argument, federal case law in this area is generally consistent with the analysis we employed in *Mamer*.[35]

---

[34] *Id*. at 18.

[35] See, *Clarke v. U.S.*, 703 F.3d 1098 (7th Cir. 2013); *Hasan v. Galaza*, 254 F.3d 1150 (9th Cir. 2001).

In fact, the Seventh Circuit has applied a similar analysis in a similar situation. In *Clarke v. U.S.*,[36] a litigant filed a § 2255 motion asking that her conviction be set aside on the ground she was not advised that she could be removed or deported if convicted based on her plea. The motion was filed more than 1 year after her conviction became final, and it was untimely unless filed within 1 year of the date the facts supporting her claim could have been discovered through the exercise of reasonable diligence.[37] The litigant admitted her lawyer had told her there might be "'immigration consequences'" if she entered a guilty plea,[38] but claimed he did not tell her directly that the result of the conviction would be deportation. She argued the 1-year statute of limitations did not begin to run until she actually discovered she would be deported.

But the Seventh Circuit explained that the "dependence of the statute of limitations on the petitioner's exercise of due diligence is equivalent to a rule of 'inquiry notice.'"[39] Reasoning that the factual predicate of the litigant's claim included the lawyer's failure to advise of a critical consequence of the conviction, the court found the litigant had inquiry notice of that factual predicate at the time of the plea, when the lawyer told her there might be "immigration consequences." Having received such inquiry notice, she should have at that point exercised due diligence to discover the facts supporting her claim, and the statute of limitations began to run.

Contrary to the argument made to this court, Jerke was not unaware of possible immigration consequences resulting from his conviction until he was informed that deportation proceedings had been initiated. Rather, the record affirmatively shows that before he entered his plea, he was advised that if he was not a U.S. citizen, conviction of the offense for which he was

---

[36] *Clarke, supra* note 35.

[37] § 2255(f)(4).

[38] *Clarke, supra* note 35, 703 F.3d at 1099.

[39] *Id*. at 1100.

charged could result in his removal from the United States. The record also affirmatively shows that while incarcerated, Jerke learned an "immigration hold" had been placed on him. These facts, whether alone or in combination, put him on inquiry notice of a possible problem with his immigration status related to his conviction, and in the exercise of due diligence, he could have discovered the factual predicate of his ineffective assistance of counsel claim during the time he was incarcerated. The Nebraska Postconviction Act was thus available to Jerke as a remedy for his ineffective assistance of counsel claim. And because the act was available, the procedure under *Gonzalez* was not.

## CONCLUSION

Under *Gonzalez*, the common-law procedure for withdrawing a plea is available only when the Nebraska Postconviction Act is not, and never was, available as a means of asserting the ground or grounds justifying withdrawing the plea and a constitutional right is at issue. As such, the unavailability of the Nebraska Postconviction Act is a material element that must be pled and proved by a defendant seeking to use the *Gonzalez* procedure. The act was available to Jerke during the time he was in custody, because he could have discovered the factual predicate of his ineffective assistance of counsel claim through the exercise of reasonable diligence.

Because the common-law procedure is not available to Jerke as a matter of law, we reverse the district court's order and remand the cause with directions to dismiss.

REVERSED AND REMANDED WITH DIRECTIONS.